## M. C. DIXON *v.* THE RICHMOND & DANVILLE RAILROAD COMPANY.

A shipped from Boston, Mass., in good order and condition a piano, to be delivered at Greensboro', N. C. The piano was in good order when it reached New York; and, nothing appearing to the contrary, it was also in like good condition when received by defendant's agent, but was delivered at Greensboro' to A, greatly damaged: *Held*, that the burden of proving that the piano was damaged on some other of the connecting lines of road, and not their own, rested with the defendants, who, failing so to prove, are responsible to the plaintiff for the injury to his piano.

CIVIL ACTION for damages, originally commenced before a Justice of the Peace, and carried on appeal to the Superior Court of GUILFORD county, where it was tried before *Kerr*, *J.*, and a jury at December Term, 1875.

The plaintiff instituted the action to recover the sum of two hundred dollars damages, on account of injury to a piano

forte, shipped by the plaintiff over the railroad of the defendant.

The plaintiff testified : In September, 1873, he shipped from the city of Boston, *via* certain lines, including that of the defendant, to Greensboro', a valuable new piano, in good order, which cost $600 at the manufactory. The piano was boxed up and was shipped by him in person, and he took a receipt therefor without reading the same, or having any of the conditions or limitations, therein, called to his attention by the agent at Boston, but supposed he was taking a receipt for the shipment of his piano to Greensboro'. He made no agreement whatever with the agent, but delivered the piano and took a receipt therefor in the regular course of his business. The receipt, through mistake, was made out to G. W. Morris, who was the manufacturer in the city of Boston, and who sent the piano to the depot for the plaintiff. He did not consent to the limitations and conditions in the receipt.

The following is a copy of the receipt :

"Boston and Providence Railroad Corporation. New York, Providence and Boston Railroad Corporations, owners. of steamboats running between New York and Stonington, in connection with New York, Providence and Boston Railroads.

J. W. Richardson, Agent, 134 Washington street; W. H. Morrell, Freight Agent, B. & P. Railroad.

M. C. Dixon, Greensboro, N. C.,⎫
          via        ⎪  Received from G. W.
Old Dominion Line to Richmond,⎬  Morris, one Piano Forte
  Va., via R. & D. R. R. to⎪  boxed.
Greensboro.         ⎭

Marked and numbered as above, to be transported by the Boston and Providence Railroad Company to Providence, and thence by the New York, Providence and Boston Railroad Company to Stonington, and thence to New York by the owners of steamboats running between New York and Sto-

nington, in connection with the New York, Providence and Boston Railroad Company.

To be delivered to said companies in manner following, to-wit: By the said Boston and Providence Railroad Company at Boston to the agent of said New York, Providence and Boston Railroad Company; by the agents of said New York, Providence and Boston Railroad Company at Stonington, to the agents of said owners of steamboats running between New York and Stonington, in connection with the New York, Providence and Boston Railroad Company; and by the said owners of steamboats running between New York and Stonington, in connection with the New York, Providence and Boston Railroad Company at the city of New York to —————— on payment of freight therefor, in like good order and condition as when received by them, respectively, (dangers of the seas, of fire, water, breakage and leakage excepted,) and no package whatever, if lost, injured or stolen, to be deemed of greater value than two hundred dollars, unless specifically re-ceipted for at a greater valuation.

And in case of any loss, detriment or damage done to, or sustained by any of the property herein receipted for, during such transportation, whereby any legal liability or responsibility shall or may be incurred, that Company shall alone be held responsible therefor in whose actual custody the same may be at the time of happening of such loss, detriment or damage.

It is understood and agreed that the property herein re-ceipted for, or any part thereof may be carried on the decks of the steam-boats from Stonington to New York.

W. H. MORRELL,

Agent for the above named Companies and owners, severally and not jointly."

The plaintiff, further testified that when the piano was opened upon its arrival at Greensboro', it was badly damaged.

There was other evidence on the part of the plaintiff tending to show that the piano was damaged before it was delivered to him at Greensboro, and that the damage amounted to two hundred dollars.

Robert Vernon was introduced as a witness for the defendant: He is the agent of the defendant at the Greensboro depot. He collected the freight for the whole line of shipment from Boston to Greensboro. When the defendants received the piano at New York, they give a receipt t c e, to l e shipped at the owners risk, and that the receipt given by the defendant to Ogburn (agent of the plaintiff) for the plaintiff set forth the fact that the piano had been shipped at the owners risk. The words "O. R." were abbreviations for "owners risk." The bill of lading and receipt given by the defendant to the New York agent showed that it had been received in New York by the defendant from a steamboat running between New York and Stonington, in connection with the New York, Providence and Boston Railroad Company.

One Kelly, an agent of the defendant was introduced and testified: He delivered the piano to Ogburn, the agent of the plaintiff, at Greensboro. That it was apparently in good order. The box bore marks of rough usage.

The plaintiff was re-called and testified: That he did not ship the piano at his own risk. There was nothing said about it to him by the Boston agent. He had no understanding of that kind with any one connected with either of the lines over which it was to pass.

Ogburn was re-called and testified: He did not know what "O. R." meant, on the receipt given him by the defendant's agent at the depot. Nothing was said about the piano being shipped at the owner's risk, when he received it and paid the freight.

It does not appear from the plaintiffs receipt that the piano was shipped "O. R."

The plaintiff's counsel requested his Honor to charge the jury :

1. That if they should find that the receipt for the piano was a special contract between the plaintiff and defendant, then the burden of proof was upon the defendant to show that the damage done the piano, was within the exceptions contained in the receipt, and that the *onus* was upon the defendant to show that there was no negligence.

2. The defendants having shipped the piano over their road in consequence of the receipt given by the plaintiff in Boston, and having collected the freight for the whole line or route, was evidence to go to the jury that it was a connecting line from Boston to Greensboro for the transportation of freight, and that there was an arrangement between the said lines and the defendant for the shipment of freight, and if the jury should find that there was such an arrangement between the said companies, and the piano was delivered at Greensboro in a damaged condition, the plaintiff is not bound to ascertain upon which one of the lines the damage accrued, but can sustain his action against the defendant.

His Honor declined the instructions prayed for, but charged the jury :

1. That it was the duty of the plaintiff to show upon which one of the lines the damage to the piano accrued, and unless they were satisfied that it accrued on the defendant's road, the defendant is not liable.

2. That if the jury should be satisfied that the damage to the piano accrued on the defendant's road, they were restricted in their estimate of damages to the piano, to the proportionate amount of the same to two hundred dollars, the limited amount of liability, as expressed in the receipt, and that the jury could not go beyond two hundred dollars valuation of the piano, in assessment of damages.

3. That the receipt taken by the plaintiff for the piano, in Boston, was an express contract between him and the railroad

company, and that he was bound by its provisions, limitations and exceptions.

The jury rendered a verdict in favor of the defendant. The plaintiff moved for a new trial. Motion overruled. Judgment and appeal by the plaintiff.

*Mendenhall & Staples,* for the appellant.
*Morehead,* contra.

READE, J. A continuous line, whether of one road, or of several, and connecting lines, are not one and the same thing. We have instances of both in this case. The receipt given at Boston for the piano, undertakes to transport it to New York city over two railroads and one steamboat line. This is an instance of a continuous line composed of several. Their liabilities as among themselves, depend upon their agreement, with which the plaintiff has nothing to do. Their liabilities to him are those of common carriers. But this is not important in this case; as, for aught that appears, all that was undertaken by that receipt has been performed—the safe delivery of the piano at New York city. So, that receipt has but little to do with this action.

From New York to Greensboro' there seems to be no continuous line in the sense just noticed ; but only connecting lines in the sense, that where one ends another begins. They are separate and distinct from each other, except that, to save the shipper the necessity of having a receiving and forwarding agent at the end of each line, one line delivers to another; and the delivering line takes from the receiving line a receipt. The receipt specifies the condition of the article, as " in good order," " in bad order." If the contents and condition are unknown, liability may be guarded against by a stipulation, or by an examination. It is important that these precautions should be observed, because by them the shipper will be able to know and prove on which line an injury has accrued. And

only in this way can the shipper know, unless he accompany the article all the way. And it is negligence in a receiving line not to take these precautions. And, failing to take them, the receiving line is presumed to have received the article in good order. If this were not so, then shippers would be at the mercy of the carriers,

Apply these principles to this case: The piano was shipped in good order at Boston ; passing over several lines, it came to the defendant's hands in good order, as is to be presumed, the burden being upon him, and he not having shown the contrary, and he delivered it in bad order. *Laughlin* v. *Chicago & N. W. R. R. Co.*, 28 Wisconsin, 204.

There is error.

PER CURIAM.                               *Venire de novo.*