SAVANNAH, FLORIDA & WESTERN RAILWAY COMPANY, AP-
PELLANT, VS. GEORGE L. HARRIS, APPELLEE.

1. In transportation of goods over connecting lines of railroad, when
there is no special contract, each road is only liable to the ex-
tent of its own line, and for safe carriage and delivery to the
next road.

2. In an action against a railroad company for goods lost by it as a
common carrier, the burden of proof is, first, on the plaintiff
to show delivery and acceptance of the goods, and next, the
loss and value thereof. This shown, the burden is upon de-
fendant to relieve itself of liability by showing legal contract
exemption, or that the loss was occasioned by a public enemy,
or by the act of God, or that the goods had in themselves ele-
ments of destruction which occasioned the loss.

3. Where goods to be transported by several carriers are lost or in-
jured, and the last carrier is sued, it will be held liable, if it
does not show that the loss or injury occurred on some pre-
ceding line, on the presumption that the goods delivered to
the first carrier were also delivered to the last, and in the same
condition in which they were started.

4. The plaintiff in this case delivered goods to a road in New York,
which were put in a car, and were to be transported in the car
over several roads to a point in Florida. The car was received
by the defendant and taken over its road to Jacksonville, an
intermediate point, and there unloaded by defendant. When

the next and last carrier made delivery at the point of destination some of the goods were missing and others injured. The evidence does not show that the lost goods were in the car when it was unloaded; or that defendant delivered them to the next carrier, but does show that some of the goods were injured when taken out: *Held*, That the presumption which applies to a last carrier, that the goods were delivered to it as they were started applies to intermediate carriers, and to defendant in this case, and that defendant, having failed to show delivery of the lost goods to the next carrier, and that those injured were in the condition in which it received them; it is liable.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*Fleming & Daniel* for Appellant.

*A. W. Cockrell & Son* for Appellee.

MAXWELL, J.: The action is by appellee against appellant for damages occasioned by the loss of goods and injury to goods while being transported from Charlotte, New York, to Buffalo Bluff, Florida. The bill of lading, given by the New York Central & Hudson River Railroad, was for one car of household goods and building material received from Geo. L. Harris with destination to him at "Buffalo Bluff, Fla., via Palatka, without transfer." It is unnecessary to consider the matters connected with the first count of the declaration and the first, second and third pleas, intended as defences to that count. These relate to the claim of plaintiff that defendant became responsible for the loss and damage because it did not deliver the car to the next succeeding road running to Palatka, as the bill of lading required ; and it is apparent from the record that the verdict of the jury in favor of plaintiff could not have been founded on that count, as this would have been di-

rectly against the evidence under the charge of the Court for defendant, that unless defendant had knowledge of that clause of the bill it was not bound thereby. Whether that charge was correct, is a question not involved in this appeal. But it was shown by the evidence that defendant was not informed of the directions of the bill of lading, and that it forwarded the goods to Buffalo Bluff by a connecting line of steamers from the terminus of its road to that point in accordance with the way-bill from an intermediate road, which did not contain the words "via Palatka, without transfer." Under the charge of the Court, therefore, the jury could not have found for the plaintiff on the issues made from the first count and the three pleas thereto.

The second count, resting somewhat on the bill of lading, we also pass by, as we think the real merits of the case are to be determined on the issues made under the third count, which is, substantially, as follows: That defendant received the car load of goods undertaking to safely keep, transport and deliver the same, but not regarding its duty as a common carrier, acted so carelessly and negligently that by reason thereof the said goods and property of plaintiff were as to part wholly lost, and as to other part greatly damaged. One plea is that defendant safely carried the goods over its line and delivered the same to the next carrier in the same condition as they were received; and another plea is that whatever injury and damage there was to said goods was caused by the careless and negligent packing of the same by the plaintiff. Issue was joined on these pleas; and the questions now to be considered are those which arose during the trial on the evidence and the charges of the court connected with this part of the controversy. The evidence shows that the goods were delivered to the initial carrier in apparent good order, and that the car in which

they were stored for transportation was received by defendant to be transported over its road without other contract than such as attached to one of the intermediate carriers between the initial and last carrier, and that the goods unladen from the car by defendant at Jacksonville, Florida, were forwarded to the point of destination as mentioned in the erroneous way-bill from another intermediate carrier. Some of the goods were lost, and others were damaged, and the recompense awarded by the jury to plaintiff for his loss and damage was $866.75 ; $87.00 of which was remitted by plaintiff. But the evidence does not disclose where the loss or damage occurred, except as to damage to building material, estimated at $60, and some of that damage the plaintiff himself attributes to the People's Line of boats to which defendant delivered the material to be carried to Buffalo Bluff. It appears, however, from the testimony of plaintiff that in an itemized estimate of his loss and damage the aggregate amount is even greater than the amount of the verdict, so that the verdict may not have included this $60, or the *remittitur* may have been intended to cover it along with other items that made up the $87. At any rate, the record does not inform us otherwise, and upon scrutinizing all the other items we see none less likely to have entered into the verdict, or more likely to have entered into the *remittitur*.

In the absence of evidence to show where all other loss and damage occurred, we must resort to the rules which govern in such cases. The contract with the initial road, as shown by the bill of lading, was that it was "not to transport the * * * goods beyond the limit of terminus of its own road." Hence its liability would be discharged upon delivering the car to the next connecting road with the contents in as good condition as when received, and

each succeeding road in the series over which the transportation was to be made would be discharged upon like delivery. As expressed by Justice Field in Myrick vs. Michigan Central R. R. Co., 107, U.. S., p. 107, "the general doctrine as to transportation by connecting lines, approved by this Court, and also by a majority of the State Courts; amounts to this : that each road confining itself to its common law liability; is only bound, in the absence of a special contract, to safely carry over its own route and safely to deliver to the next carrier, but that any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect, such liability will not attach." The same court had previously said, in Railroad Co. vs. Manufacturing Co.; 16 Wall., 318, that the " rule which holds the carrier only liable to the extent of its own route, and for safe storage and delivery to the next carrier, is in itself so just and reasonable that we do not hesitate to give it our sanction." See, also, Knight vs. Providence & Worcester R. R. Co., 9 Am. and Eng. R. R. Cases, 90, and Borroughs vs. Grand Trunk R. Co., 32 Am. and Eng. R. R. Cases, 467 and note 474. There was no special contract in the present case except that with the initial road, so that each of the connecting roads on receipt of the car was only responsible for its own default.

The rule as to the loss of goods is correctly stated by Rorer, we think, as follows : " In an action against a railroad company for goods lost by it as a common carrier, the burden of proof, first, is on the plaintiff to prove the delivery and acceptance of the goods to be carried ; and secondly, the loss, and the value thereof. This makes a *prima facie* case for the plaintiff. To absolve the defendant from such *prima facie* liability, the burden of proof is then changed to the

defendant, and it devolves upon him to overcome plaintiff's testimony by a preponderance of contradictory evidence, or else, being unable to do so, the burden of proof then rests upon the defendant to show the loss to have been occasioned by the enemies of the public, or by the act of God. In default of such showing of either the one or other of these defenses, or of overcoming plaintiff's evidence, the liability rests upon defendant, unless the goods themselves contained in their nature elements of destruction occasioning their loss. In that case, this must be alleged and proven by defendant." Defendant may, also, relieve itself by showing legal contract exemption.

It is shown by the evidence that the car was delivered to defendant's road at Jesup, (Ga.), and was transported thereon to Jacksonville. The loss of a portion of the goods and the value of the same is also shown, but where the loss occurred, whether on defendant's line or some other, is not shown. In such case, there being several carriers, and no contract except with the initial one, the law is, if the last carrier be sued, that it will be held liable, on the presumption that when the car was delivered to it the contents were the same as when started by the first carrier. And this presumption applies, also, to the condition of the goods the car contained. See Smith vs. New York Central R. R. Co., 43 Barb., 225 ; Dixon vs. Richmond & Danville R. R. Co., 74 N. C., 538 , Laughlin vs. Chicago & N.-W. R. R. Co., 28 Wis., 204; Shriver vs. Sioux City & St. Paul R. R. Co., 24 Minn., 506; Lin vs. Terre Haute & Indianapolis R. R. Co., 10 Mo., App. 125 ; Leo vs. St. Paul, Minneapolis & Manitoba R'y Co., 30 Minn., 438.; (12 Am. and Eng. R R. Cases, 35) ; Montgomery & Eufaula R'y Co. vs. Culver, 75 Ala., 587 ; (22 Am. and Eng. R. R. Cases, 411). The reason of the rule of evidence is founded upon the better

means the connecting carriers have to ascertain where the loss occurred. In the nature of the business, the party employing the transportation is not expected to follow up his goods to see that each carrier makes proper delivery to the succeeding one; but his reliance is, and the duty of each carrier is, that the goods shall be delivered as received. If not delivered at the point of final destination, it is but reasonable that the last carrier should account for them, and bear the responsibility of loss, if not able to show it never received them. Public policy requires this under the system of transportation over several lines of road, for the protection of those who engage in such commerce, because there is less hardship upon the carrier to trace the loss, it being ordinarily impracticable for the owner to trace it without great trouble and expense, and sometimes to the consumption of the value of the property lost. Commenting on the first three of the above cases, in a note to Knight vs. Providence & Worcester R. R. Co., 9 Am. and Eng. R. R. Cases, 90, the writer aptly says that they "are based on the soundest principles of public policy. When a shipper consigns his goods to a line of connecting carriers to be carried to the point of destination, he, of course, loses all sight of and all control of them. If an injury occurs, or a loss is occasioned while *en route*, he has no conceivable means of proving in whose hands they were at the time of the loss or injury. It is, therefore, perfectly proper to shift the burden of proof on the carrier who is sued." In Smith vs. New York Central R. R. Co., *supra*, the doctrine is expressed as follows : "The general rule is, that things once proven to have existed in a particular state, are to be presumed to have continued in that state until the contrary is established by evidence, either direct or presumptive. * * * * * Unless this rule is to be applied to goods deliv-

ered, to be transported over several connecting railroads, there would be no safety to the owner. It would often be impossible for him to prove at what point, or in the hands of which company, the injury happened. But give to such party the benefit of the presumption that the goods he has delivered in good order in such case, continued so until they came to the possession of the company which delivers them at the place of destination in a damaged condition, and his rights will be completely protected. The burden is then shifted upon the latter company of proving that such goods came to its possession in a damaged condition, by way of defense. This proof the latter company can always make, much more easily and readily than the converse can be proved by the owner. This is in perfect harmony with a well settled rule of law, as an exception to the general rule. The general rule undoubtedly is, that the burden of proof is always upon the party who asserts the existence of any fact which infers legal responsibility. But the exception is equally well established, that in every case that *onus probandi* lies on the party who is interested to support his case by a particular fact which lies more particularly within his knowledge, or of which he must be supposed to be cognizant. If the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party."

The cases cited, except one, relate to the last carrier. Strictly speaking, the defendant in this case was not the last carrier, but in the case of Montgomery & Eufaula R'y Co. vs. Culver, *supra*, it is held that the same presumption which applies against the last also applies to an intermediate carrier. And it would seem that so far as the contents of a box or car are concerned, or the condition of those

contents, the presumption which attaches to the last carrier must necessarily attach to each preceding one after the first, for there could not be such a presumption against the last carrier except through a continuity of presumptions against those preceding. The defendant, therefore, must be held to have received the car just as it left the point of original departure; and it stands in the relation of last carrier, according to the principle which binds the last, because by its action it was in position to know what goods were in the car when discharged, and the condition of those goods. The reason the last carrier is held liable in such cases is that it is supposed to know what it received and delivered. The same reason applies in this case to defendant. It received and discharged the car. It knew, or ought to have known, what goods the car contained, and what was the condition of those goods. Its obligation was to deliver the goods to the next carrier in like quantity and condition as they were received. Did it do that? There is nothing to show that it did. The strongest evidence for defendant that it did was that one of its agents broke the seal upon the car, took out what was found in it, and delivered the same to the People's Line of boats, alleged to be the next and final carrier. But this evidence fails to show what was delivered, or whether the lost goods were included in the delivery, a fact peculiarly within the knowledge of defendant, after opening the car and delivering its contents. The burden of proof was on defendant to show full delivery, having been brought to that duty by the presumption that on receiving the car for transportation all the goods were in the car. But we go no further as to the liability of intermediate connecting lines than is authorized by the circumstances of this case, which so nearly assimilate it to that of a last carrier.

As to the injury to the goods when taken from the car, there is no dispute in regard to the broken state of a tool chest. The other goods, according to some testimony for appellant, were not damaged, but this seems inconsistent with the labored effort to show that the goods were badly packed in the car; and is in conflict with the evidence of a witness for appellee, who received the goods for the People's Line. He says: "The goods were in very bad condition. They were broken up, the boxes were all smashed up, and a tool chest was broken right in two." When asked where he first saw the broken furniture, he said: "If I am not mistaken, it was in the evening, and the damaged goods were in the car. They were badly smashed up. I don't think they were broken in taking out." It was the province of the jury to decide between the parties in this conflict of evidence, and this Court, in the absence of anything to show improper influence operating on their minds, will not disturb their finding.

The sum of the situation, then, is this: The contents of the car were delivered to the first carrier in "apparent good order," and the jury, in the absence of proof to the contrary, were authorized to presume that when delivered to defendant the contents were all still in the car, and uninjured. It was then the duty of defendant to show delivery in the same condition to the next carrier. It has not done this; and having discharged the car, and being thereby in position to know what it did deliver, and having failed to show that in making delivery to the People's Line, it delivered the goods that were lost, and that such as were delivered were in the condition in which it received them, the jury were further authorized to presume that the loss and injury occurred on its line, except as to that part of the injury shown to have been done on the People's Line. In

this state of the case we must hold that the defendant is liable.

It is unnecessary to consider the several errors assigned in detail, as in the view we have taken of the case they are all covered, and in our opinion are either without good foundation or immaterial. The judgment in the case will be affirmed.