G. W. FAISON & SON *v.* ALABAMA & VICKSBURG RAILWAY CO.

1. CARRIERS.    *Connecting lines.    Loss of freight.    Presumption.*

Where goods in cases are shipped over connecting lines of carriers, on a through bill of lading, and on reaching their destination a case is missing, in an action therefor against the last carrier, the burden of proof is on it to show that the loss did not occur on its line, and this although it is an independent carrier, having no partnership connection with the others.

2. SAME.    *Burden of proof.    Evidence.    Case in judgment.*

This presumption is not overcome by proof that the car into which all the cases were loaded by the preceding carrier came "under seals" of that carrier, and that it had no end windows, it appearing that on arrival at destination it was for the first time noted that one case had been somewhere recoopered, and it not being shown when, where or how the missing case was lost, or that such seals were sufficient to bar all access, and continued unbroken throughout the journey.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

Appellants, G. W. Faison & Son, were consignees of certain merchandise shipped on a through bill of lading from Philadelphia, Pa., to Vicksburg, Miss. Appellants were in business at Indianola, in Sunflower county, Miss., and the goods were consigned in the bill of lading to them, in the care of the Sunflower River Packet Company, at Vicksburg, to be transported by the packet company to Indianola.

The shipment consisted of four cases of calico and one case of dry goods, and was received in good order at Philadelphia by the Virginia, Tennessee & Georgia Air Line, which issued a through bill of lading, showing a consignment to appellants at Indianola, Miss.; but the bill of lading only extended to Vicksburg, Miss., and stipulated for a certain rate to that city. It did not stipulate for any particular route between

Philadelphia and Vicksburg. The shipment proceeded first over the line of the East Tennessee, Virginia & Georgia Railroad Company to Chattanooga, Tenn., thence over the Alabama Great Southern Railroad to Meridian, and thence over the Vicksburg & Meridian Railroad to Vicksburg. When the shipment came to be delivered at Vicksburg to the packet company, it was found that one case was missing, and that one of those received had been recoopered.

As is usual in such cases, the Vicksburg & Meridian Railway Company, the last carrier, instituted inquiry to ascertain where and how the loss occurred, the method pursued being to send what are termed tracers along the route, each company making inquiry of the one next preceding it, and furnishing copies of all way-bills, notations and exceptions showing the condition of the goods along the route. After some months this search was completed, and a large mass of papers, consisting of way-bills, copies of entries from the books of the several companies and correspondence between their several officials in reference to the loss, was produced, but it failed to show any positive evidence as to how or where the case of goods was lost.

Meantime the Vicksburg & Meridian Railroad, which, at that time, was in the hands of a receiver appointed by the United States circuit court, was, by the order of that court, sold, and purchased by the defendant, the Alabama & Vicksburg Railway Company; and, by the terms of the purchase, and of the decree of the court confirming the same, certain outstanding liabilities were agreed to be paid by the purchasing company. Among the claims for damages thus assumed to be paid, if its validity was established, was the claim of the appellants for the above-mentioned case of goods.

Having failed to locate the liability for the loss, as between the several connecting railroads, G. W. Faison & Son brought this action, for the value of the case of goods, against the Alabama & Vicksburg Railway Company, insisting that liability rested upon it, as the last carrier, unless it showed that the

loss did not occur on its line or through its fault.   To avoid
the cost and trouble of taking depositions, it was agreed by
counsel, in the court below, that all the letters, way-bills, ex-
ceptions and other entries accumulated in the efforts to trace
the loss should be admitted in evidence, and that the state-
ments contained in them should be treated as the testimony
of the officers and employes of the several companies by
whom they were respectively made or signed.   From these,
in connection with the pleadings, the following facts are de-
duced : Previous to the arrival of the shipment at Vicksburg,
no exception had been made at any point because of short-
age or damage.   The shipment reached Chattanooga in a car
of the East Tennessee, Virginia & Georgia Railroad Com-
pany, from which it was transferred to the Alabama Great
Southern Railroad Company, which checked the shipment
and receipted therefor to the East Tennessee, Virginia &
Georgia Railroad Company.   The way-bill of the Alabama
Great Southern Railroad Company shows that all the cases
were then loaded, at Chattanooga, into a car of the Vicksburg
& Meridian Railroad Company, and this car went through to
Vicksburg, encountering, either at Chattanooga or some-
where along the route, a delay of nearly two weeks.   There
was no evidence whatever to show the condition of the car
or its contents after the receipt of the goods by the Ala-
bama Great Southern Railroad Company, at Chattanooga,
until the car reached Vicksburg, when the agent in that city
forwarded an exception to the agent of the preceding carrier
at Chattanooga, noting the shortage and the fact that
another case had been recoopered.   Upon receipt of this ex-
ception, the agent of the Alabama Great Southern, at Chat-
tanooga, for the first time, made an exception as against the
East Tennessee, Virginia & Georgia Railroad Company, al-
leging a shortage of one case in the shipment when previ-
ously received from it.   This exception bears date after
receipt of the notice of shortage at Vicksburg, and was
signed with the initials of the agent.   No entry is shown to

have been made, or note of any shortage taken, at the time the goods were transferred in Chattanooga. This subsequent exception led to a controversy between the respective agents of the two companies at Chattanooga; the agent of the delivering line at that point alleging, in his correspondence, that all the cases of goods were delivered in good order, and questioning the good faith of the exception subsequently preferred by the Alabama Great Southern Railway Company. The agent of the latter company admitted that the entry of the exception of shortage bore a date after exception was received from Vicksburg, and admitted that the exception was made upon information afterwards imparted by the clerk who checked the shipment, and further admitted that he could not explain why it was not noted in due course of business, as the employe who checked the shipment could not be found. In the exception thus made by the Alabama Great Southern Railway Company, no mention was made of damage to any case of goods, or the fact that one case had been recoopered. The several way-bills exhibited give certain numbers opposite the word " seals," which have reference to the sealing of the doors of the car, and are intended to give the numbers placed on the seals; and in the exception made by the agent at Vicksburg, and in his letters, the shortage is mentioned as being " against Chattanooga seals."

The foregoing is substantially all the evidence derived from the books and papers of the several companies tending to explain the delay, which occurred either at Chattanooga or between that city and Vicksburg. It was admitted, that, on account of the supposed existence of yellow fever in Jackson, Miss., a quarantine was declared on the 20th day of September, 1888, and that the way-bill of the Alabama Great Southern Railway Company showed receipt by it of the goods at Chattanooga on September 21. It was therefore improbable that the shipment passed through Jackson until the removal of the quarantine, about ten days afterwards.

It was also agreed that the defendant was an independent

line, not acting with the other carriers under any partnership arrangement.

The case was submitted, by agreement, to be decided by the court without a jury.   Judgment for defendant.

*Brame & Alexander*, for appellants.

It was only necessary for plaintiffs to show delivery in good order to the initial carrier, and incomplete delivery by the defendant.   *Railroad Co. v. Tupelo Fur. Mfg. Co.*, 67 Miss., 35.   More especially is this true where the shipment is on a through bill of lading.

The same rule applies in case of incomplete delivery, as when goods are delivered in a damaged condition.   Hutch. on Carriers, § 761; 2 Rorer on Railroads, 1266; 9 Am. & Eng. R. R. Cas., 90; *Leo v. Railway Co.*, 12 *Ib.*, 35; 28 Wis., 204; 74 Cal., 542; *R. R. Co. v. Harris*, 42 Am. & Eng. R. R. Cas., 457.

The rule which imposes the burden of proof on the last carrier, is not changed because a railroad company receives goods in a foreign sealed car.   *Leo v. Railroad Co., supra; Railroad Co. v. Swift*, 12 Wall., 262; *Express Co. v. Hess*, 53 Ala., 19.

If the defendant desired to exonerate itself from liability, it should have shown that it opened the car at Meridian and examined its contents.   As it received the goods on a through bill of lading, and failed to deliver, the presumption is that the loss occurred through its negligence.   In case of connecting lines; the receiving carrier is agent of the connecting carrier who has received goods under a through bill of lading for transportation over its line.   Hutch. on Carriers, § 761; *Express Co. v. Hess, supra.*

Although connecting carriers are not liable as partners, if they transport goods on a through bill of lading, prorating the freight, the last carrier, who delivered them, should show where the loss occurred, and not content itself by merely denying its own liability.

The exception of the agent of the Alabama Great Southern

Railway Company, at Chattanooga, was gotten up after the fact, and to serve the obvious purpose of shifting the liability from his company. The controversy that arose between the two companies at Chattanooga throws no light on the real question, but leaves it entirely in doubt when or where the loss occurred. There is nothing to overcome the presumption of liability which attaches to the last carrier. The exception made by the agent at Vicksburg "against Chattanooga seals," and the fact that the way-bills have certain numbers opposite the word seals, is too vague. If it be true, as contended, that the car was sealed at Chattanooga, and remained sealed until it reached Vicksburg, it was impossible for the case of dry goods to have been recoopered. As neither the exceptions nor the way-bills at Chattanooga showed that the case had been recoopered, the car must have been opened somewhere between these two cities. The defendant could have shown where the loss occurred, and, failing to do so, was liable.

*Nugent & Mc Willie,* for appellee.

The fact is established that the seals of the East Tennessee, Virginia & Georgia car were broken at Chattanooga, and the cases removed into the Vicksburg & Meridian car, which was sealed up, and the car turned over to the Alabama Great Southern Railway Company, to be carried to Meridian. It was there delivered, sealed, to the Vicksburg & Meridian Railroad Company, and transported to Vicksburg. When the seals were broken, and the shipment was unloaded, it was found one case short. Exception was at once taken, and the companies at Chattanooga notified, and the agent there acknowledged the exception to be true. There were no end windows to the car, and access was impossible without breaking the seals, and the seals did not appear to have been broken when the car reached Vicksburg. Under such circumstances, appellee would be liable only in case all the carriers were liable; in other words, if they were partners. It is expressly

agreed in this case that the lines were independent, and there is nothing in the bill of lading which would create a joint liability. The effort in this case is to avoid well-established facts by reliance upon the law of presumption, but the rule invoked is not one of general application. It is grounded on the presumption that things, when proven to exist in a particular state, are presumed to so continue. We submit that the probabilities in a particular case may prevent the application of this rule. Ordinarily, a subsequent carrier should be required to show in what condition goods came into its hands, and that these conditions were not changed while they were in its keeping. 31 Am. Rep., 356.

In this case, the goods were lost, and not damaged at all. Besides, the rule should have no application where goods are conveyed by successive carriers in sealed cars. As a matter of convenience to the carriers and the public, this is usually done where car-load lots are transported. In such cases cars cannot be stopped at every junction, and their contents inspected. To apply the rule in such cases would be highly unjust.

Argued orally by *L. Brame*, for appellants, and *T. A. Mc-Willie*, for appellee.

CAMPBELL, C. J., delivered the opinion of the court.

As the defendant was the last of successive carriers, having independent lines of carriage, but carrying continuously in pursuance of through bills of lading, and the car containing all the boxes at Chattanooga, where according to the evidence they were last seen, afterwards came to the possession of the defendant, it devolved on it to show that the missing box was not in the car when received by it. The evidence warrants the belief that all the cases or boxes were delivered, at Chattanooga, to the Alabama Great Southern Railroad Company, and put in a car, which is alluded to as having been "sealed," and probably was, and this car was

received by the defendant at Meridian, but when and in what condition, as to seals or contents, is not shown. One box or case of goods was missing at Vicksburg, on the arrival and opening of the car there. *When* or *where* or *how* the box got out of the car is not shown. The argument is, that as the car was "sealed" at Chattanooga, and as it had no "end windows," there was no way of getting at its contents *en route,* without breaking the seals, and it must be assumed that one of the boxes was not, in fact, delivered to the connecting road at Chattanooga, and, therefore, did not come to the possession of the defendant. If this argument were supported by the evidence, a different question would be presented, but it is not supported by evidence. It is not shown that the car was sealed at Chattanooga so as to deny access to its contents without breaking the seals. It is not shown that the seals remained as put on. All is conjecture and unsatisfactory inference as to that. It does appear that nearly two weeks elapsed after the delivery of the goods at Chattanooga and their arrival at Vicksburg, and the car is not accounted for during that time; and it is shown that somewhere one of the cases or boxes was "recoopered." There is no hint that this occurred before delivery of the goods at Chattanooga. It must be assumed that it was done after delivery at Chattanooga. To do this, it was necessary to get at the case or box. This may have been done after the car came into the hands of the defendant. It was for it to show that it did not. It failed to exculpate itself by overthrowing the presumptions against it, and must be held liable for the loss, which may have occurred on its line of carriage.

The judgment should have been for the plaintiffs, and the judgment rendered will be

*Reversed and cause remanded for a new trial.*