ISLER et al. v. F. C. LINDE CO.

(Supreme Court, Appellate Term. December 26, 1900.)

WAREHOUSEMAN—DAMAGE TO GOODS—ACTION—EVIDENCE—PRIMA FACIE CASE.
　　Plaintiff delivered certain goods to a warehouseman, and subsequently received a letter from defendant company reciting that it had taken possession of the warehouse and would thereafter conduct the same, and that customers would in no way be affected by the change of ownership. On the return of the goods at plaintiff's request several months later, part of the same were found to be damaged. *Held*, that a showing by plaintiff that the goods were in sound condition when delivered to the original warehouseman was sufficient to make out a prima facie cause of action against defendant company, since it had assumed to continue the storage undertaken by the warehouseman.

Appeal from municipal court, borough of Manhattan, Third department.

Action by Paul A. Isler and another against the F. C. Linde Company. From a judgment in favor of defendant, plaintiffs appeal. Reversed.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

Taylor & Seymour, for appellants.

G. D. B. Hasbrouck, for respondent.

BEEKMAN, P. J. On the 2d day of November and on the 7th day of the same month, 1894, the plaintiffs, who are straw-goods importers in this city, delivered to R. J. Dean & Co., warehousemen, 83 bales of straw goods for storage, receiving from the latter at the time the usual warehouse receipts for such goods. The articles were delivered wrapped with matting, and, as the proof shows, were in sound

condition when delivered to R. J. Dean & Co. On the 24th day of March, 1899, the plaintiffs received from the defendant the following letter:

"The F. C. Linde Company by an amicable arrangement with Messrs R. J. Dean & Co. took possession of all the warehouse operated by the latter, and will hereafter conduct the same. The supervision of this business will remain in the hands of Mr. Alvin J. Donally, one of the partners of Messrs. Dean & Company. Customers will in no way be affected by the change of ownership. Every accommodation as heretofore will be given them. The general office of Dean & Company at No. 302 Greenwich street will be discontinued on and after April 1st, 1899, and all business will be transacted at our general office, corner of Varick and Beach streets, St. John's Park, N. Y. Central & Hudson R. R. Company's freight terminal."

On the 18th day of April, 1899, plaintiffs received a postal card from the defendant reading as follows:

"We beg to notify you that your goods have been transferred from 390–92 Greenwich street to 387–91 Greenwich street."

No further communication took place between the parties until December, 1899, when the plaintiffs requested the defendant to return the goods above mentioned. Upon such return it was discovered by the plaintiffs that four bales were damaged to such an extent as to be practically worthless.

Upon the close of the plaintiffs' case the defendant rested without putting in any evidence, and thereupon moved for judgment dismissing the complaint on the ground that the plaintiffs had failed to prove a cause of action. The trial justice thereupon awarded judgment in favor of the defendant, with costs, from which judgment the plaintiffs have appealed to this court.

Had the goods in question remained in the possession of R. J. Dean & Co. down to the time of their delivery to the plaintiffs, there would have been no doubt of their liability for the injuries complained of. The goods having been received by them in good order and condition, and having been returned in a damaged condition, it would have been sufficient for the plaintiffs to show these two facts to make out a prima facie case against the warehouseman, because the presumption thereupon arose that the injuries were caused through the negligence of the latter. It then becomes incumbent upon the warehouseman to show facts and circumstances tending to rebut the presumption, and where these are shown the plaintiff must then resume his proofs, and show by a preponderance of evidence that notwithstanding the explanation given by the defendant there had been actual negligence on his part which was the proximate cause of the injury complained of. But in the case at bar there was a change of bailees, and the claim is made on the part of the defendant that it became responsible for the care and custody of the goods only from the time when they were delivered to the plaintiffs; that it is no more likely that the injuries complained of took place while the property was in its custody than while it was in that of R. J. Dean & Co.; that, so far as it is concerned, the duty rested upon the plaintiffs of showing that the goods came into its hands in good order and condition; and that, having failed in this essential element of proof, no cause of action against it had been made out. I think, however, that this propo-

sition is untenable. The defendant did not receive the goods from the plaintiffs as an original bailment. It assumed to continue the storage of the goods which had been undertaken by R. J. Dean & Co., and, without any intervention on the part of the plaintiffs, it took the goods in question directly from said company, and in most unmistakable language placed itself in precisely the same situation with respect to the plaintiff and the articles in question as R. J. Dean & Co. would have held had there been no such change. Of course, the consent of the plaintiffs was necessary to this change, and that was at least tacitly given. But the defendant was the chief actor in the transaction, and was manifestly so desirous of relieving the plaintiffs from any trouble in the matter, or any apprehension that they might in any way be placed at a disadvantage by reason of the change, that in the letter above quoted it assured them that "customers will in no way be affected by the change of ownership." The defendant did not require the plaintiffs to examine their goods for the purpose of determining whether they had suffered any injury while in the hands of R. J. Dean & Co., but left them to infer that the storage was to be regarded as a continuous one, and that prima facie, at least, the articles stored were to be considered as in the same condition as they were when received by the original bailees. I am quite satisfied that, considering the nature of this transaction, the plaintiffs, upon being notified of the assumption by the defendant of the storage contract, were under no obligation whatsoever to make any examination of their goods, and that it was sufficient for them to show, as they did, that when originally stored the articles were in good order and condition. They were then entitled to rely upon a presumption of a continuance of this condition up to and at the time when the defendant assumed control of the property, and it then became the duty of the defendant to rebut this presumption by showing, if he could, that the injury complained of had happened while the goods were in the actual custody and control of R. J. Dean & Co. Of course, it is not claimed here, nor with propriety could it be, that the defendant would be liable for the negligent acts of the latter. The plaintiffs can succeed in this action only on the theory that the damage in question was caused by some lack of ordinary care on the part of the defendant, so that the question under discussion relates not so much to the substantive law with respect to the duties and obligations of warehousemen, as to the sufficiency of the proof essential to make out a prima facie case against the latter.

A case quite analogous to the one in hand is that of Smith v. Railroad Co., 43 Barb. 225, affirmed by the court of appeals, without opinion, in 41 N. Y. 620. In that case the plaintiff proved a delivery of the property in good order to the Western Railroad Company in Massachusetts, to be transported to R. Milliman, in Rochester, N. Y.; that the railroad of that company connected with the defendant's railroad at Albany; and that the goods were delivered to Milliman, in Rochester, by defendant's freight agent, in so damaged a condition as to be entirely worthless. The trial court dismissed the complaint on the ground that it was not shown that the property in question was in good order and condition at the time when it was transferred to the

defendant by the Western Railroad Company. The judgment was reversed by the general term, the opinion of the court being given by Johnson, J. At page 226 the court says:

"The defendant's counsel insists that there was no evidence to show that the property was in a sound condition when it was received by the defendant. If this is so, the nonsuit was proper. The plaintiff must, of course, give evidence sufficient to show that the goods were in good condition when they came to the possession of the carrier, as part of the evidence that they had been injured while in the carrier's custody. Merely showing a delivery by the carrier in an injured condition is not enough. It must be shown in what condition the carrier received them, in order to prove an injury in his hands. This may be shown by direct affirmative evidence, or by proof of facts and circumstances from which the presumption of fact arises that the goods were in proper condition when the carrier received them. Enough was, I think, proved in this case to raise such a presumption. The property was placed in the possession of the Western Railroad Company in good order and condition, and, until the contrary is shown, must be presumed to have continued in that condition while in the possession of that company. It was delivered by the defendant, after being transported over its road from Albany to Rochester, in a damaged condition, and the further presumption necessarily follows that it received the injury while in the possession of the defendant. The general rule is that things once proved to have existed in a particular state are to be presumed to have continued in that state until the contrary is established by evidence either direct or presumptive. Best, Pres. § 136; Sleeper v. Van Middlesworth, 4 Denio, 431; Walrod v. Ball, 9 Barb. 271; Cooper. v. Dedrick, 22 Barb. 516. Unless this rule is to be applied to goods delivered, to be transported over several connecting railroads, there would be no safety to the owner. It would often be impossible for him to prove at what point or in the hands of which company the injury happened. But give to such party the benefit of the presumption that the goods he has delivered in good order in such case continued so until they came to the possession of the company which delivers them at the place of destination in a damaged condition, and his rights will be completely protected. The burden is then shifted upon the latter company of proving that such goods came to its possession in a damaged condition, by way of defense. This proof the latter company can always make much more easily and readily than the converse can be proved by the owner. This is in perfect harmony with a well-settled rule of law, as an exception to the general rule. The general rule undoubtedly is that the burden of proof is always upon the party who asserts the existence of any fact which infers legal responsibility. But the exception is equally well established that in every case the onus probandi lies on the party who is interested to support his case by a particular fact which lies more particularly within his knowledge, or of which he must be supposed to be cognizant. If the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. 1 Greenl. Ev. 183, 184. * * * In this case, and all cases of like nature, I think it is enough for the owner to show that he delivered the property to the connecting road in good condition, and that the burden is then cast upon the company delivering the goods injured of proving that they were not injured in their possession, or that they came to their possession thus injured."

The reasoning of that case applies with full force in the case at bar, and precisely the same presumption with respect to the condition of the goods at the time when they were received by the defendant in that case necessarily arose with respect to the condition of the property in this case at the time when it came into the hands of the defendant. There is no injustice in this, because it is apparent that the defendant was in a very much better position to ascertain the condition of the plaintiff's property at the time when it assumed control of the same than were the plaintiffs themselves.

It took the property over, not from the plaintiffs, but from the warehouseman who had originally received it; and, having it in its possession with full opportunity for examination, there is nothing unreasonable in holding the defendant to the duty of ascertaining for its own protection whether the articles so received by it were then in the condition complained of. It follows from what has been said that the plaintiffs made out a prima facie case against the defendant, which was entirely unanswered, and judgment should have been rendered in their favor. It was, therefore, error to dismiss the complaint, for which the judgment appealed from must be reversed.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event.