JONES, Appellant, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, December 12, 1905.

1. **COMMON CARRIERS: Loss on Connecting Line.** Where property is received for shipment over its own and connecting lines, by a railroad company, and the property is lost in transit, it will be presumed. in the absence of proof to the contrary, that the loss occurred while the property was in the hands of the last connecting carrier.

2. ———: ———: **Defective Vehicle.** A railroad company is bound to furnish safe and suitable vehicles for the transportation of property usually carried by it, and the failure to do so is negligence. Where a railroad company received hogs for shipment over its own and connecting lines and loaded them into a car from which they escaped on account of defects in the car, the railroad company was liable to the shipper for the loss, though the loss occurred on a connecting line and though the contract of shipment limited the liability to the railroad company's own line.

3. ——: ——: ——: Inspection: Estoppel.   In such case, even though the shipper inspected the car, he was not estopped to sue for his loss.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

REVERSED AND REMANDED.

*Virgil Rule* and *J. D. Hostetter* for appellant.

The trial court erred in refusing instruction No. 2. Where a carrier undertakes to transport live stock it is bound to furnish good and sufficient cars and if it does not and animals escape by reason of defects in its cars beyond the terminus of its road it will be liable for the loss even though there be a special contract undertaking to exempt it from loss beyond the end of its line.   Potts v. Railway, 17 Mo. App. 394; Railway v. Strain, 81 Ill. 504; Brown v. Railway, 18 Mo. App. 568; Popham v. Barnard, 77 Mo. App. 619; Railroad v. Pratt, 22 Wallace (U. S.) 628; Hutchison on Carriers, 292.   The trial court erred in refusing instruction No. 5.   It is not the duty of the shipper to examine the car, but it is the duty of the carrier to furnish safe and suitable cars.   The recital in the contract that the shipper examined the car and found it safe does not operate as an estoppel.   Sloan v. Railway, 58 Mo. 220, and cases cited above; Mason v. Railway, 25 Mo. App. 473; McDaniel v. Railroad, 24 Iowa 412; Railroad v. Hawell, 45 Am. and Eng. R. cases 358; Wallingford v. Railroad, 30 Am. and Eng. R. cases 40; Railroad v. Pratt, 49 How. Pr. (N. Y.) 84.

*L. F. Parker* and *J. G. Egan* for respondent.

The respondent was under no common-law duty to transport these hogs beyond its own line, or to furnish a car therefor.   Hutchinson on Carriers (2 Ed.), secs. 145, 146.  4 Elliott on Railroads, secs. 1432, 1433.   The

respondent was not under any statutory duty to the same effect. Sec. 1083, R. S. 1899. The respondent did not assume any contract obligation to carry this car load of hogs beyond its own line. Bank v. Railroad, 72 Mo. App. 82; Miller Grain & Elevator Co. v. Railway, 138 Mo. 658, 40 S. W. 894; McCann v. Eddy, 133 Mo. 59, 33 S. W. 71; Railroad v. McCann, 174 U. S. 580; 43 L. Ed. 1093, 1097; Western Sash & Door Co. v. Railroad 177 Mo. 641; Marshall & Michel Grain Co. v. Railroad, 176 Mo. 480; Railroad v. Viers, 68 S. W. 469. The respondent, not having any common-low or statutory duty to transport the hogs, or furnish a car for the same, beyond its own line, and not having made a contract to carry beyond its own line, could validly make an agreement limiting its responsibility to its own line, and to require the shipper to inspect the car and assume the responsibility therefor, so far as transportation beyond its own line was concerned. Hutchinson on Carriers (2 Ed.), secs. 149b and 149c; 4 Elliott on Railroads, secs. 1438, 1439. If there was an absence of evidence as to where the loss of the hogs occurred, it would be presumed to have occurred upon the last of the connecting lines. Hutchinson on Carriers (2 Ed.), sec. 761; Baker v. Railroad, 34 Mo. App. 98.

BLAND, P. J.—On June 14, 1903, plaintiff delivered to defendant railroad company, at its station at Winona, Missouri, one hundred and fifty-four hogs to be carried by rail to Frankford, Missouri. The hogs made a carload, and it was agreed that they should be transported to their place of destination for fifty-seven dollars, to be paid by plaintiff on the arrival of the car at Frankford. The terminus of defendant's line was at St. Louis, at which point the car was delivered to the Wabash Railroad Company and by it hauled to Gilmore, Missouri, and there delivered to the St. Louis & Hannibal Railroad Company, by which company the car was hauled to its destination. When the car arrived at Frankford, eleven

of the hogs were missing.  On examination of the car, it was found that there had been a door in one end which had been removed and the open space closed by nailing boards or slats over the opening, from the inside of the car.  The lower ends of the posts to which the boards were nailed were decayed, and the lower board, which was six inches wide, had fallen off, leaving an opening large enough for the hogs to escape from the car, and the supposition is that the eleven missing hogs got out of the car through this opening.  The suit is for the value of the lost hogs.

The issues were tried to the court, without a jury, who refused all the plaintiff's instructions and found the issues for the defendant.  Plaintiff appealed.

There is no evidence showing at what point on the road the hogs escaped from the car.  They were all in the car at Springfield, Missouri.  On its arrival at St. Louis, the car was inspected and found in order, but the hogs were not counted.  In the absence of proof to the contrary, the presumption is, that the hogs escaped while in the hands of the St. Louis & Hannibal Railroad Company, the last carrier.  [Hutchinson on Carriers, sec. 761.]  Notwithstanding this presumption, the plaintiff contends that defendant was bound to furnish a good and sufficient car and if it failed to perform this duty and the hogs escaped, beyond the terminus of its line, by reason of defects in the car, it is nevertheless liable, even though the contract of shipment undertook to exempt it from any loss that might accrue while the car was in the possession of a connecting carrier, and notwithstanding the fact that, by the terms of the contract of shipment, the plaintiff agreed and undertook to inspect the car for himself and notify the defendant and demand another car, if the one furnished was found to be defective.  We think the plaintiff's position is right.  From considerations of public policy, to furnish sound and suitable vehicles for the transportation of such property as is usually carried by them, is a duty that common carriers can-

not shirk or shift. [Sloan & Co. v. Railroad, 58 Mo. 220; Potts v. Railway, 17 Mo. App. 394; Brown v. Railway, 18 Mo. App. 568; Popham v. Barnard, 77 Mo. App. 626.] A case squarely in point is Indianapolis, Bloomington & Western Ry. Co. v. Strain et al., 81 Ill. 504, where it was ruled that when a railroad company undertakes to transport live stock, it is its duty to furnish good and sufficient cars in which to carry the same, and if it does not, and animals escape from defects in its cars, beyond the terminus of its road, it will be liable for the loss, even though there be a special contract limiting its liability to the end of its road.

Hutchinson on Carriers (2 Ed.), sec. 293, says: "No defect in any vehicle, or in any instrument used in the transportation of goods, can excuse the common carrier from his common-law liability to be answerable for the safety of the goods at all events, except when the loss may occur from the act of God or of the public enemy. He can guard himself against responsibility for loss or damage from such cause only by contract; and, as we have seen, if the accident which occasioned such loss or damage can be traced to his negligence, not even his contract will be a protection to him except in those states in which he is allowed to contract for exemption from the consequences of his negligence." It is pertinent to remark in this connection, that Missouri is not one of the States in which a common carrier may contract for exemption from the consequences of its own negligence.

In St. Louis, I. M. & S. Ry. Co. v. Marshall, 86 S. W. (Ark.) 802, it is held that if a common carrier fails to furnish a proper car for a shipment and injury results to the goods from a defect in the car, the carrier is liable, although the injury may have occurred beyond such carrier's line, and this is so, even though the shipper inspected the car and knew of the defect.

In Western Railway Co. v. Harwell, 91 Ala. 340, it is said: "If the carrier furnishes an unsafe and unsuitable car for the transportation of live stock, this is negli-

gence; and a recital in the bill of lading that the shipper examined the car, and found it safe and suitable, does not operate as an estoppel, but only imposes on him the burden of proving that it was unsafe or unsuitable."

In Mason v. Railway, 25 Mo. App. 473, it is said: "A carrier cannot exonerate himself from resulting damage by reason of a breach of his implied duty to furnish suitable means to safely transact his business; and this, though the cars are seen by the shipper, who also attends his stock."

The shipment was a through shipment; there was to be no unloading of the hogs at the end of defendant's road and they were not to be reloaded into a car of the connecting carrier, therefore, the danger of losing the hogs or part of them, on account of the negligence of defendant in furnishing a defective and insufficient car, did not end with the delivery of the car to the connecting carrier, but continued throughout the entire route, and it seems to us, both upon principle and authority, that defendant should be held liable for the loss.

Other points are discussed in the briefs of counsel, but as this one is decisive of the case, we deem it unnecessary to notice them.

The judgment is reversed and the cause remanded. All concur.