·CHARLES W. SCHAGRIN, d. b. a., *vs.* EDWARD S. BACON and WIFE,  ·
p. b. r.

1. WAREHOUSEMEN—STATEMENT OR MATTERS TO BE PROVED THAT JURY MAY ASSESS DAMAGES AGAINST SUCCEEDING BAILEE.

The validity of a verdict against a succeeding warehouseman, naming an amount in damages for negligent loss and injury of the property stored, ordinarily depends upon the existence of evidence from which the jury may find not only the value of the goods when returned to bailor, but that the property came into the defendant's possession and was lost or damaged by his negligence, and its value when it came into his possession; and, in the absence of proof of either of these elements, a directed verdict for bailee would be proper.

2. WAREHOUSEMEN—MEASURE OF DAMAGES TO GOODS STORED AGAINST SUCCEEDING WAREHOUSEMAN STATED.

Measure of damages against a succeeding warehouseman for loss or injury to the property stored is the difference between its value when it came into the succeeding warehouseman's possession and that when returned to the bailor.

3. WAREHOUSEMEN—EVIDENCE NECESSARY TO SHOW VALUE OF GOODS RECEIVED AND LOST OR INJURED BY SUCCEEDING WAREHOUSEMAN.

In an action against a succeeding warehouseman for negligent loss of property stored, plaintiff can make out a prima facie case by showing its good condition and value when delivered on the original bailment and its condition and value when returned by defendant.

4. WAREHOUSEMEN—SUCCEEDING WAREHOUSEMAN NOT RESPONSIBLE FOR NEGLIGENCE OF HIS PREDECESSOR.

Independent of statute, a warehouseman is ordinarily responsible only for his own negligence, and not for the negligence of a preceding warehouseman.

5. WAREHOUSEMEN—EVIDENCE HELD TO CREATE A JURY QUESTION AS TO VALUE OF PROPERTY AND NEGLIGENCE.

In an action against a succeeding warehouseman for loss and damage to property stored, evidence *held* sufficient to create a jury question as to both value of the property and negligence.

(*June* 9, 1922.)

HARRINGTON, J., sitting.

*Aaron Finger* for defendant below, appellant.

*P. Warren Green* for plaintiffs below, respondents.

Superior Court for New Castle County, March Term, 1922.

Appeal from Court of Common Pleas, No. 295, September Term, 1921.

Application for a new trial in an action on the case, on an alleged contract of bailment.

The evidence of Edward S. Bacon and Margaret Bacon, his wife, the plaintiffs below, shows that they stored their household furniture on the 2d day of July, 1919, in a storage warehouse, then managed by one A. N. Jacoby; that some time in the month of October, 1920, they received a bill for the rent of said property from Charles W. Schagrin, and thereafter, until January 20, 1921, paid him the rent at the same rate previously paid Jacoby; that they were given no opportunity to examine their property when it came into the possession of Schagrin; that on the 20th day of January, 1921, they took their said property out of storage, at which time it was delivered to them by Schagrin; that they found most of it had been damaged by water, that some articles were missing and that others had missing parts; that there was a leak

in the roof and a broken window in the building near the place where said property was stored and that there had been a severe rainstorm shortly before the said 20th day of January.

Over the objection of Schagrin's attorney, the Bacons were also permitted to show what property was delivered or bailed by them to Jacoby and its value and condition at that time; said testimony being admitted as prima facie evidence of what property of the plaintiff's below came into the possession of Schagrin and its condition and value at the time it was delivered to him.

The evidence produced by Schagrin, the defendant below, and the appellant in this case, showed that the warehouse in which the Bacons' goods were stored came into his possession in the month of October, 1921; that, while he allowed said household goods to remain in said building, and collected the storage rent therefor, he did not conduct a storage business, but used said building as a wholesale dry goods store; that the condition of said property when it came into his possession was precisely the same as when it was returned by him to Bacons on the 20th day of January, 1921, and that all the property belonging to the Bacons that came into his possession from Jacoby was delivered to them at that date.

He denied also that there was a leak in the roof or a broken window near the bin in which the Bacons' goods were stored. The evidence as to the value of the property of the Bacons was conflicting.

The verdict was for the Bacons, the plaintiffs below.

The motion for a new trial was, among others, for the following reasons:

(1) That the verdict was against the law.

(2) That the verdict was against the evidence.

(3) That the refusal of the court to instruct the jury to find a verdict for the defendant below, appellant, as prayed, was erroneous.

HARRINGTON, J., delivering the opinion of the court:

Under the instructions given the jury the validity of the verdict in this case depends upon the existence of direct or circum-

stantial evidence from which they could properly find two things:

[1, 2] First, that property of the Bacons, the plaintiffs below, came into the possession of Schagrin, the defendant below, and was lost or damaged by his negligence.

Second, the value of such property when it came into the possession of Schagrin.

Proof of the latter fact is necessary in order to ascertain the damage suffered by the Bacons, the measure of damages being the difference between the value of their property when it came into the possession of Schagrin, and its value when it was returned to them.

If there was no evidence from which these facts could be found, the verdict was not only improper, but the prayer for binding instructions in favor of the defendant below should have been granted. If, however, the record shows any evidence from which such facts could be inferred, the case was properly submitted to the jury, and the verdict should not be set aside.

[3] It is admitted that the only evidence in the record offered to show that the lost property was ever received by Schagrin, as well as the good condition and value, when he received it, of that property, and of the property returned by him January 20, 1921, is the evidence showing what property was delivered to Jacoby on the original bailment, and the condition and value of such property at that time. The record also shows what property was returned to the Bacons and its damaged condition when returned.

The question, therefore, is whether such evidence is prima facie evidence of negligence as to all the property originally bailed to Jacoby.

Prior to the enactment of the Carmack and Cummins Amendments to the Interstate Commerce Act (*U. S. Comp. St.* §§ 8604a, 8604aa), it was often important to ascertain on which of several railroads the damage to a shipment passing over several connecting lines was done; the line causing such damage being alone liable. *Hutchinson on Carriers*, § 1347; *Moore v. Railroad*, 173 *Mass.* 335, 53 *N. E.* 816, 73 *Am. St. Rep.* 298.

And when property was delivered to a consignee in a damaged

condition, and the delivering carrier was sued for the resulting losses, evidence of the good condition of the goods when delivered to the first carrier was admitted as tending to show what goods came into the defendant's possession; that they were in good condition when received and that the injury or loss, therefore, occurred while in its possession. Such proof made a prima facie case of negligence against the delivering carrier.

*Smith v. N. Y. Central*, 43 *Barb.* (*N. Y.*) 225; *Moore v. Railroad*, 173 *Mass.* 335, 53 *N. E.* 816, 73 *Am. St. Rep.* 298; *Laughlin v. C. & N. W. R. R.*, 28 *Wis.* 204, 9 *Am. Rep.* 493; *Shriver v. S. C. & S. T. P. R. R. Co.*, 24 *Minn.* 506, 31 *Am. Rep.* 353; *S. F. & W. Railway Co. v. Harris*, 26 *Fla.* 148, 7 *South.* 544, 23 *Am. St. Rep.* 551; *Hutchinson on Carriers*, § 1348; 4 *Elliott on Railroads*, § 1450; 1 *Roberts, Federal Liabilities of Carriers*, § 344.

The same rule also applied to a lost shipment, or to a shortage in the same, such loss or shortage being considered in the nature of damages done thereto. *Jones v. Railroad*, 115 *Mo. App.* 232, 91 *S. W.* 158; *Faison v. Railway Co.*, 69 *Miss.* 569, 13 *South.* 37, 30 *Am. St. Rep.* 577; *Gwyn-Harper Mfg. Co. v. Railroad*, 128 *N. C.* 280, 38 *S. E.* 894, 83 *Am. St. Rep.* 675; *Railway Co. v. Birdwell*, 72 *Ark.* 502, 82 *S. W.* 835; *Hutchinson on Carriers*, § 1348, and note 6, *pp.* 1592, 1593.

The primary theory on which such evidence was admitted was that, when the delivery of specific property to the first carrier and its good condition at that time were once shown, the presumption was that it continued the same until shown to be in bad condition or deficient in quantity. The rule of convenience, if not of necessity, because the facts were within the knowledge of the defendant, was also applied; the argument being that if the rule were otherwise it would be impossible in many cases to show what property of the shipper came into the possession of the delivering carrier, and its condition at that time. Such proof was, however, only prima facie evidence of negligence and might be rebutted by the delivering carrier. *Hutchinson on Carriers*, § 1348; *Burwell v. Railroad*, 94 *N. C.* 455; *Leo v. St. Paul, etc., Railway Co.*, 30 *Minn.* 438, 15 *N. W.* 872.

What has been said as to proof of the condition and quantity of the shipment applied with equal force to its value. *S. F. & W. Ry. Co. v. Harris,* 26 *Fla.* 148, 7 *South.* 544, 23 *Am. St. Rep.* 551.

While the question is not material to this case these rules probably were not affected by the Carmack and Cummins Amendments to the Interstate Commerce Act. *Chi. & N. W. Ry. Co. v. Whitnack Prod. Co.,* 254 *U. S.* 625, 42 *Sup. Ct.* 328. But see 1 *Roberts, Federal Liabilities of Carriers,* §§ 344, 345.

[4] Ordinarily a bailee, like a carrier, independent of statute is responsible only for his own negligence, and not for the negligence of a preceding bailee. The principles applicable to the evidence in connecting carrier cases would, therefore, seem to apply to cases of successive bailees, where the owner has no positive proof of what property came into the possession of the delivering bailee, or of its condition and value at the time such bailee received it, and, therefore, has no direct evidence of negligence. *Isler v. F. C. Linde Co.,* 33 *Misc. Rep.* 465, 67 *N. Y. Supp.* 1072, is a bailment case of that character, applying the rules laid down in the connecting carrier cases above cited.

The defendant below attempted to distinguish the New York case, on the ground that the defendant in that case took over the warehouse business of the original bailee and so notified the plaintiff. While that fact did appear, the decision was expressly based on the principles above referred to in the connecting carrier cases, and it was only mentioned by the Court as strengthening the usual presumption as to the continuance of a condition once shown.

It is a significant fact that no successive bailee case laying down any contrary rules of evidence was cited by the appellant, and it is, therefore, assumed that no such case can be found.

[5] The conclusion of the court is that, while the evidence both as to negligence and as to damage was conflicting, yet there was evidence of both of these facts on which the verdict can be sustained. The case was, therefore, properly submitted to the jury, and their verdict cannot be set aside. Consequently, the motion for a new trial is refused.