M. Leo and another *vs.* St. Paul, Minneapolis & Manitoba Railway Company.

June 6, 1883.

**Damage to Goods in Transit—Evidence.**—Evidence considered, and *held* sufficient to warrant the jury in finding that the property in question was damaged while in transit, and after it had been delivered to the first carrier.

**Connecting Carriers — Presumption as to Condition of Goods when Received by Last Carrier.**—Where goods have been transported by several successive carriers, and it appears that they were in good condition when delivered to the first carrier, the jury may, in the absence

of evidence to the contrary, presume that the goods reached the hands of the last carrier in the same condition as when delivered to the first carrier in the line; following *Shriver* v. *Sioux City & St. P. R. Co.*, 24 Minn. 506. This rule is not changed by the fact that the last carrier, instead of transferring the goods, transports them over its line in the foreign car in which it received them.

Appeal by defendant from an order of the district court for Clay county, where the action was tried before *Stearns*, J., and a jury, refusing a new trial.

*R. B. Galusha* and *J. Kling*, for appellant.

*O. Mosness* and *F. D. Larrabee*, for respondents.

MITCHELL, J. The plaintiff shipped a car-load of stoves at Chicago with the Chicago & Northwestern railroad, consigned to themselves at Moorhead, in this state. The goods passed to their destination over the Chicago & Northwestern and the Omaha railroads to St. Paul, and thence to Moorhead over defendant's road. When they arrived in St. Paul, the defendant, instead of transferring them, allowed them, as is customary, to be transported over their road in the foreign car in which they had been transported from Chicago, and billed them through in that car from St. Paul to Moorhead, without opening it or inspecting the contents. When the car reached its destination and was opened, the stoves were found badly broken, and hence this suit for damages.

We think there was evidence from which the jury might find that the stoves were in good condition when delivered to the first carrier. It is true that plaintiff did not produce such evidence, but this would be immaterial if the defendant subsequently supplied it. In its attempt to show that the stoves were damaged by reason of bad packing, we think defendant produced evidence tending to show that the damage occurred while the property was in transit. In fact, the introduction of such evidence proceeds upon that assumption. The nature of the breakage, as described by the witnesses, tends to show that it occurred in the car. One witness says that, "judging from the manner in which these stoves were broken, I should say that there was negligence either in the packing or carrying of these stoves; the

breakage of these stoves might have been caused either from poor packing or from careless management in carrying them."

We have not overlooked the fact that this same witness testifies that they were not properly packed, and that this, in his opinion, was the cause of the injury,—a cause for which, if it existed, the shipper, or the first carrier, and not defendant, was responsible. But as to the mode of packing, the evidence was conflicting; one of the plaintiffs, who saw the stoves when the car was opened, testifying that they were properly packed. The jury might have found from the testimony on the part of the defendant that the damage occurred while the goods were in transit, and yet be at liberty to reject the theory of the witnesses that it was caused by careless packing.

2. Where goods have been transported by several successive carriers, and it appears that they were in good condition when delivered to the first carrier, the jury may presume, in the absence of evidence to the contrary, that the goods reached the hands of the last carrier in the same condition as when delivered to the first carrier in the line. This rule is founded upon important considerations of public policy. *Shriver* v. *Sioux City & St. Paul R. Co.*, 24 Minn. 506; *Laughlin* v. *Chicago & N. W. Ry. Co.*, 28 Wis. 204; *Smith* v. *N. Y. Cent. R. Co.*, 43 Barb. 225; *Brintnall* v. *Saratoga & W. R. Co.*, 32 Vt. 665; *Dixon* v. *Richmond & Danville R. Co.*, 74 N. C. 538.

This rule is not modified or changed by the fact that the last carrier, instead of transferring the goods, transported them over its line in the foreign car in which it received them. As a matter of convenience to the carriers themselves, this is usually done where the freight is received in car-loads for a common destination. To indulge in a different presumption in such cases would, as business is now conducted, practically abrogate the rule referred to. We can see no distinction in this respect between goods transported by the car-load in a locked car and goods transported in a package nailed or otherwise fastened up. If there be any difference, it would be in favor of applying the rule more strictly in the former case than in the latter; for we see no reason why the carrier would not have the right to open the car for the purpose of inspecting the contents,—a right which they might not have in the case of closed packages.

Of course, we are not now speaking of cars in transit from a foreign country, in bond, and under the seal of the United States custom-house authorities.

Order affirmed.