GEORGE M. COLBATH AND THOMAS M. HOYT

*vs.*

BANGOR & AROOSTOOK RAILROAD COMPANY.

Aroostook.    Opinion May 28, 1909.

*Common Carriers.    Terminal Carrier Liable for all Damages to Goods Injured While in Transit.    Carrier Liable for Failure to Observe Directions. Damages.    Same Cannot be Apportioned.    Presumptions.*

Where goods are delivered in good condition to the initial carrier to be carried by a succession of connecting common carriers and are delivered by the last or terminal carrier in a damaged condition, the presumption is well established that the injury to the goods occurred on the line of the last or terminal carrier upon whom is imposed the burden of exonerating itself. This presumption arises even though the goods are delivered to the terminal carrier in a sealed car.

A common carrier is liable for damage to goods resulting from disobedience of directions given by the owner and assented to by the carrier, respecting the mode of conveyance.

If a common carrier accepts for transportation a package having legible directions as to carriage, he is liable for loss arising from a failure to observe such directions.

In an action for damages for injuries to goods carried, brought against the last only of a succession of connecting common carriers, even if upon the evidence it is manifest that part of the damages occurred upon the line of a preceding carrier, no apportionment of the damages is to be made but the defendant in such action must be held liable for all the damages.

On report. Judgment for plaintiffs.

Action on the case to recover damages for injuries to twenty crates of asbestos roofing transported by the defendant in its capacity as a common carrier, from Old Town, Maine, to Easton, Maine. Plea, the general issue.

Tried at the November term, 1907, Supreme Judicial Court, Aroostook County. At the conclusion of the evidence, and by agreement of the parties, the case was reported to the Law Court with the stipulation that that court should "have full power to determine all questions of fact involved in the case, and to determine the amount of the plaintiffs' damages, should the plaintiffs be entitled thereto."

The facts, as found by the court and stated by Mr. Justice BIRD who drew the opinion, are as follows:

"The plaintiffs bring this action to recover damages from defendant for injuries to twenty crates of asbestos roofing, in all 120 squares or sheets, carried by defendant, as a common carrier, from Old Town to Easton, their place of destination. The roofing consisted of sheets of asbestos, with a layer of asphalt between, subjected when hot to the action of rolls. The sheets thus produced were about eight feet long by about thirty inches wide and about one eighth of an inch thick. The crates in which the roofing was packed had solid ends and sides but the tops and bottoms were formed of slats of about five inches in width. All the crates were plainly marked "Lay Flat" on either side and also on each end. The value of the goods at invoice price was $339.60.

"Thus crated and in good order the roofing was delivered July 6, 1904, at New York by the manufacturers to the Maine Steamship Company to be forwarded, via defendant's railroad, to plaintiffs at Easton, Maine. The Steamship Company, upon delivery to it, gave to the consignor a bill of lading or shipping receipt of substantially the ordinary form, the weight being given as 7000 pounds. Subsequently a car containing fifteen of the crates was delivered upon the premises of the consignees at Easton. The car was promptly opened and the crates found to be standing on their sides or edges, not laid flat as directed, and the sheets of roofing to

have sagged from two to five inches from the upper sides of the crates and to be badly bulged and wrinkled. The remaining five crates arrived at the same time or shortly after and were found to be similarly loaded and damaged. The plaintiffs refused acceptance and defendant later sold the roofing under the statute and October 21, 1904, paid to the plaintiffs $76.35, being the proceeds of the sale, less freight and advances.

"On the part of defendant the undisputed evidence was to the effect that on the ninth day of July 1904, the Maine Steamship Company delivered the twenty crates of roofing to the Maine Central Railroad at Portland to be forwarded and delivered to defendant carrier. Upon the evening of July 11, 1904, between eight and nine o'clock defendant received at Old Town from the Maine Central Railroad Company, M. C. R. R. car No. 1158 and B. & A. car No. 7430, each fully sealed with Maine Central Railroad Company seals of its Portland Station. These seals were intact and indicated that the cars had come through from Portland to Old Town unopened. These cars left Old Town the same evening between nine and ten o'clock and were hauled by defendant to Houlton where they arrived on the morning of the following day, July 12, the seals remaining unbroken. At Houlton both cars were opened by the servants of defendant and each crate was found to be standing on edge. The B. & A. car, No. 7430 was re-sealed with defendant's seals without change in the position of the fifteen crates and the five crates were transferred from car No. 1158, in which they arrived at Houlton, to B. & A. car No. 7075. the crates being again loaded on edge. The same day these cars were carried onward by defendant and reached Easton between five and six o'clock on the evening of that day. Car No. 7430 containing the fifteen crates was opened at Fort Fairfield Junction, a short distance from Easton, and two pieces of granite placed in the car.

"After the roofing was refused by plaintiffs, the fifteen crates remained on edge for several days when they were laid flat and there is evidence tending to show that the five crates, after some delay were also laid flat."

*Anthoine & Talbot, and Madigan & Madigan*, for plaintiffs.

*F. H. Appleton, Hugh R. Chaplin, Louis C. Stearns, and Powers & Archibald*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, BIRD, JJ.

BIRD, J.   In consequence of the rule prevailing in most of the courts of the United States, that, in the absence of partnership or other contract between connecting lines or special contract with shipper or consignee, each of a succession of connecting common carriers is relieved of further obligation by safe carriage over its own line and prompt delivery to the succeeding carrier: *Perkins* v. *P. S. & P. R. R. Co.*, 47 Maine, 573, 589; See also *Grindle* v. *Eastern Express Co.*, 67 Maine, 317, 320; the presumption has been established that, when goods are delivered to the initial carrier in good condition and are delivered by the last or terminal carrier in a damaged condition, they were injured on the line of the latter upon whom is imposed the burden of exonerating himself: *Moore* v. *Railroad Co.*, 173 Mass. 335, 337; *Cote* v. *Railroad Co.*, 182 Mass. 290; *Bullock* v. *H. & B. Dispatch Co.*, 187 Mass. 91.   This presumption has been declared to be one of convenience and necessity and to be based upon the presumption that goods shown to have been delivered in good condition remain so until shown to be in bad condition: *Moore* v. *N. Y., &c. R. R. Co.*, ubi supra.

In the case of *Philadelphia, etc. Co.* v. *Diffendal*, recently decided by the Court of Appeals of Maryland, in considering this presumption, it is said:   "The reason of the rule, or rather the reason for the exception to the general rule, is that, when a shipper consigns his goods to a line of connecting carriers to be carried to the point of destination, he of course loses all sight of or control over them. From that time forward they are committed to the custody and management of the initial and connecting carriers, and these latter may each in turn, by the exercise of reasonable caution, ascertain the condition of the goods at the time of accepting them from the

last preceding carrier, and thus in case of loss be able to prove where the loss occurred; whereas, the shipper has no means whatever of obtaining the necessary information, or witnesses to prove his case, except by summoning the employés of the carriers whose own negligence has caused the loss. One great difficulty that he would encounter in persuing this course would be to discover which of the defendant's employés had knowledge of the facts. Should he be able to discover these, it would still be dangerous for the shipper to rest his case upon their testimony, since the natural impulse of mankind would be likely to sway them, in narrating the circumstances, to state the occurrence in the light most favorable to themselves, in order to palliate their fault." 73 At. Rep. 193, 197.

The presumption arises even though the goods are contained in a package locked, sealed or otherwise closed; *Moore* v. *Railroad Co.*, and *Bullock* v. *H. & B. Dispatch Co.*, ubi supra; *Leo* v. *St. Paul, M. & M. Ry. Co.*, 30 Minn. 438, 440: and also although they are delivered to the terminal carrier in a sealed car; *Leo* v. *St. Paul, etc. Ry. Co.*, ubi supra: *Cote* v. *Railroad Co.*, ubi supra.

A carrier is liable for damage to goods resulting from disobedience of directions given by the owner and assented to by the carrier, respecting the mode of conveyance; *Sager* v. *P., etc., R. R. Co.*, 31 Maine, 228; *Hastings* v. *Pepper*, 11 Pick. 40; and if a carrier accepts a package having legible directions as to carriage, he is liable for loss arising from failure to observe them: *Hastings* v. *Pepper*, ubi supra.

Applying these principles of law, which are amply supported by authority and are consonant to reason, we are unable to find that defendant has exonerated itself. It is true that the plaintiffs, confessedly not very familiar with the character of the goods, testify that if the crates containing the roofing were shipped on edge, the weight of the sheets would cause them to sag so that they would wrinkle and bulge and especially so in warm weather and that an employé of the manufacturers states that the reason for marking the crates "Lay Flat" was, that if they were stowed on end for any length of time they would buckle up to the injury of the goods. Whether an appreciable length of time or a considerable length of

time is meant is uncertain.    But there is an entire lack of evidence as to the condition of the goods at Old Town or at Houlton or Fort Fairfield Junction.    It is impossible, therefore, for us to find that no part of the injury occurred subsequent to their delivery to defendant at Old Town.

For an apportionment of the damages between defendant and the carrier immediately preceding it, earnestly urged by defendant, we find no authority ; *Lake* v. *Milliken,* 62 Maine, 240 ; *St. L., I. M. & S. Ry. Co.* v. *Coolidge,* 67 L. R. A. 555, 557.

In accordance with the agreement of the parties, there must be, *Judgment for the plaintiffs for $324.68 with costs.*