HOUSTON E. & W. T. RY. CO. v. HOUSTON PACKING CO.
(No. 341.)

(Court of Civil Appeals of Texas. Beaumont. May 18, 1918. Rehearing Denied June 5, 1918.)

1. COMMERCE ⟶8(1)—COURTS ⟶97(1)—INTERSTATE COMMERCE — SUPREMACY OF FEDERAL LAW AND DECISIONS.

A bill of lading having covered an interstate shipment, its provisions and stipulations, under consideration by a court of Texas, must be construed and given such effect as would be given by the federal courts or as compelled by the acts of Congress on the subject, regardless of what effect such stipulations and provisions may have, if any, in a bill of lading covering an intrastate shipment, since the acts of Congress and the decisions of the federal courts relative to interstate commerce are supreme.

2. CARRIERS ⟶159(2) — NOTICE OF CLAIM — VALIDITY OF STIPULATION — INTERSTATE COMMERCE.

Under the acts of Congress relating to interstate commerce, as construed by the federal courts, a stipulation in a bill of lading covering an interstate shipment requiring claims for loss, damage, or delay to be made in writing to the carrier at the point of delivery or point of origin within four months after delivery, or, in case of failure, within four months after a reasonable time for delivery, is valid and binding, and must be given effect by the court.

3. CARRIERS ⟶159(3) — STIPULATION AS TO NOTICE—WAIVER—INTERSTATE COMMERCE.

The carrier of an interstate shipment under a uniform bill of lading, approved by the Interstate Commerce Commission, which became a part of the tariff rate filed by the carrier with the Commission, and required notice to the carrier within four months of delivery, at point of delivery or point of origin of claims for loss, damage, or delay, could not waive compliance by the shipper with the stipulation, either expressly or by implication, but was bound to enforce and give effect to the same as a part of its tariffs filed with the Commission.

4. CARRIERS ⟶159(3) — STIPULATION AS TO NOTICE—WAIVER—INTERSTATE COMMERCE.

If the Interstate Commerce Commission had no authority to authorize an interstate carrier to waive stipulation of a uniform bill of lading requiring notice of claims for loss, damage, or delay within four months, and if the carrier without such authorization was without authority to waive the stipulation, there could be no legal waiver of stipulation in the bill of lading, either express or implied.

5. COMMERCE ⟶88—ORDERS OF COMMISSION —STIPULATION AS TO NOTICE—WAIVER.

Implied authority from the Interstate Commerce Commission to an interstate carrier to waive stipulation in a uniform bill of lading requiring written notice of claims for loss, damage, or delay within four months, could not have controlling effect in a shipper's suit for damages against the carrier, where the order of the Commission was not in existence when the cause of action arose nor when suit was commenced.

Appeal from Harris County Court; W. E. Monteith, Judge.

Suit by the Houston Packing Company against the Houston East & West Texas Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood and McMeans, Garrison & Pollard, all of Houston, for appellant. Hutcheson & Bryan, of Houston, for appellee.

HIGHTOWER, C. J. On the 5th day of January, 1914, the Houston Packing Company, appellee, filed its petition in the county court of Harris county, Tex., seeking to recover $435.95, with 6 per cent. interest from the 13th day of June, 1911. For cause of action, appellee alleged that on or about the 13th day of June, 1911, it delivered to the Houston East & West Railway Company, appellant, a carload of meat, to be transported by said railway company and its connecting carriers to the city of New York, state of New York, and there to be delivered to the Houston Packing Company, notify Haft & Horwitz; that the reasonable market value of the meat at the time of the delivery to appellant railway company was $1,640.91; that at the time the car of meat was delivered to appellant it executed a bill of lading, whereby it agreed and obligated itself to safely carry, from Houston, Tex., to New York City, N. Y., and there deliver the same to appellee in good condition, and that appellant further agreed and obligated itself and its connecting carriers to keep said car of meat well iced along the route at points specified in such bill of lading, and at other points, if necessary; that appellant and its connecting carriers did not sufficiently ice said car of meat as it obligated itself to do, and failed to carry and promptly deliver same with due diligence, and that by reason of said negligence said car of meat, at the time it reached New York City, was of the reasonable value of only $1,204.96, and that by reason of the negligence of appellant and its connecting carriers appellee was damaged in the difference between the actual value of the meat at the time of its delivery to appellant and the value of the meat at the time it was delivered to appellee in New York, which difference was $435.95.

By its first amended original answer appellant denied the material allegations in appellee's petition; and further alleged that, if the meat was in an inferior condition at the time it reached New York, it was due to negligence on the part of appellee in the preparation of the car containing same, in that such car was not properly cooled by appellee at the time the meat was placed therein, and that said car was improperly constructed for the handling of meat. And appellant further pleaded, specially, among other things, that said shipment was an interstate shipment, and that the bill of lading under which the car of meat moved contained the following clause:

"Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery, or at the point of origin, within four months after delivery of the property. Unless

claims are so made, the carrier shall not be liable."

The answer further alleged that such stipulation in the bill of lading was a valid and binding one; that no notice of any character respecting any loss, damage, or delay to said shipment was given to appellant, or to any agent of it, at the point of delivery, or at the point of origin; that, said shipment being an interstate one, the rules and regulations prescribed by the federal statutes, Interstate Commerce Commission, and the federal laws governed the liability of appellant as to said shipment of meat.

To this answer appellee, Houston Packing Company, replied by supplemental petition, in which, among other things, appellee pleaded that said stipulation with respect to notice of damage, etc., was unreasonable and void; and by further pleading—

"that, when this claim was presented in writing to the defendant, it did not then, nor at any time thereafter, until its amended answer was filed in this cause, make any objection to the time or manner of presentation of plaintiff's claim, with reference to the subject-matter of this suit. but received, handled, and investigated the same on its merits, and never at any time advised plaintiff that the claim would not be considered, or would be rejected, because it was not presented within the time stipulated, and thereby defendant waived the presentation of said claim in the terms of the stipulation in said bill of lading, even if the same was otherwise binding on plaintiff."

There was also contained in the supplemental petition of appellee a plea to the effect that appellant was estopped by its conduct to claim the benefit of the stipulation in said bill of lading providing for notice in writing as to damages, etc., within four months.

The case was submitted to the court, without a jury, upon practically an agreed statement of facts, and judgment was rendered in favor of appellee for the sum of $435.95, with interest thereon at the rate of 6 per cent. per annum from the 20th day of June, 1911. Exception to this judgment was duly made, and notice of appeal duly given, and the cause is now properly before this court for review.

The first assignment of error found in appellant's brief is as follows:

"The court erred in rendering judgment against the defendant. and in favor of the plaintiff, because the undisputed evidence showed that this suit was one for damages claimed to have been received by the plaintiff by reason of the negligence of the defendant company in the handling and transportation of a car of meat from Houston to New York, that the same was an interstate shipment, and defendant's liability, if any. was governed and controlled under and by virtue of the federal statutes and federal laws, and the undisputed evidence further showing that the bill of lading under which said car of meat moved contained a stipulation that no claim for damages should be allowed unless such claim was presented within four months after the arrival of said car of meat at destination, and the undisputed evidence, as well as the agreement on file, show no claim for damages to said meat, was presented to the defendant company or the delivering carrier within the period of four months prescribed and stipulated in said bill of lading."

This assignment is submitted as a proposition. The second proposition under this assignment is as follows:

"The liability sought to be enforced is the liability of an interstate carrier for damages under an interstate contract of shipment, as declared by the Carmack Amendment, and the validity of the stipulation requiring notice to be given within four months raises a federal question, to be determined under the federal law, and cannot be controlled by state laws or legislation."

The following facts were agreed upon by the parties, to wit:

"I. That on June 13, 1911, plaintiff delivered to defendant a carload of dressed beef, in Houston Packing Company car No. 22, to be transported to New York City, N. Y., and that a through bill of lading was issued therefor, which was accepted and signed by plaintiff, said bill of lading being dated June 13, 1911, and which bill of lading contained the following provision: 'Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery, or at the point of origin, within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable.' That said car arrived in New York City, and was delivered to consignee on June 20, 1911, and at the time of such delivery the contents of said car were partially damaged.

"II. That no written claim for damages of any character to said shipment was made to the defendant or any of its connecting carriers, or to any of their agents, until October 24, 1911, more than four months after said shipment arrived at its destination and was delivered to consignee, and that on the 24th day of October, 1911, the plaintiff fully notified this defendant, through its agent at Houston, in writing, of the damages claimed by it on account of the negligent handling and improper icing of said car, and that the contents of said car were damaged to the extent of $435.95; and it is further agreed that plaintiff, by reason of the matters asserted in the claim, is entitled to recover of and from defendant said sum of money, unless said claim is defeated on account of plaintiff's failure to give notice of such claim for damages within the time prescribed in said provision of said bill of lading. It is further agreed that both plaintiff and defendant have offices within a short distance of each other in the city of Houston, Harris county, Tex., and that the agents of defendant company at Houston are well known to the officers and agents of plaintiff, and that in a large number of similar shipments of fresh meat by plaintiff over defendant's line of railroad, where damage occurred to such shipments, plaintiff, in the great majority of such instances, gave the defendant written notice of its damage, as provided for in said bill of lading; that the officers and agents of plaintiff intrusted with the shipment of said meat are active and intelligent business men, and are able to read and write the English language, and that plaintiff knew of the condition of said shipment on its arrival at point of destination within the time allowed for notice.

"III. It is further agreed that if the court or jury holds that said provision in said bill of lading is valid, reasonable and binding upon plaintiff, and has never been waived, then plaintiff is not entitled to recover anything in this

cause against the defendant herein, or any of its connecting carriers.

"IV. It is further agreed that, when this claim was presented in writing to the defendant, the correspondence hereto attached and marked Exhibit A passed between the plaintiff and defendant with reference to said claim, and that this was the only negotiation that passed between the parties, and that plaintiff, on May 26, 1915, placed said claim in the hands of its attorney for collection, and that plaintiff was never notified that defendant would claim as a defense said clause until alleged in its amended answer.

"V. It is further agreed that the carriers have uniformly and persistently insisted upon the enforcement of this clause since December, 1913, but that prior to that time, either through oversight or for reasons appearing good to the carriers, some claims probably were paid that were presented after the time stipulated in said clause.

"VI. It is further agreed that the clause relied upon by defendant was printed upon the back of said bill of lading, which was delivered to the plaintiff or consignor herein, and that in executing the bill of lading no reduced freight rate or other consideration than stipulated therein was furnished or offered plaintiff; the bill of lading under which said shipment moved is hereto attached as Exhibit B and made a part hereof.

"VII. It is agreed that the uniform bill of lading adopted June 2, 1915, by the Interstate Commerce Commission, in Southern Classification No. 3, Supplement No. 8, is hereto attached, and marked Exhibit C, and is still in full force and effect.

"VIII. It is further agreed that on February 9, 1915, the Railroad Commission of Texas issued a ruling or order, which is still in full force and effect, and a copy of which is hereto attached and marked Exhibit D."

The trial court filed no findings of fact or conclusions of law, and this court cannot tell what view the trial court took regarding the validity of the stipulation contained in the bill of lading under which this shipment moved, to the effect that claims for damages, etc., must be made in writing within four months; but the court must have been of the opinion either that this stipulation in the bill of lading was invalid for the reason that it was unreasonable, as alleged by appellee, or that appellant had waived compliance on the part of appellee with this stipulation; otherwise the trial court would have been bound, under the agreement of the parties, and such additional evidence as was introduced, to render judgment in favor of appellant.

[1, 2] It being undisputed that the bill of lading in question covered an interstate shipment, its provisions and stipulations, when under consideration by courts of this state, must be construed and given such effect as would be given by the federal courts, or as compelled by the acts of Congress on the subject, regardless of what effect such stipulations and provisions may have, if any, in a bill of lading covering an intrastate shipment. The acts of Congress relative to the field of interstate commerce are admittedly supreme, and also must our state courts follow the decisions of the federal courts on all questions pertaining exclusively to interstate commerce. Under the acts of Congress, as construed by the federal courts, the stipulation as to the manner and time of giving the notice of damage contained in the bill of lading under consideration was valid and binding, and such effect must be given by this court. Georgia, Florida & Alabama Ry. Co. v. Blish Mill. Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948; Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Ry. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Ry. Co. v. Rankin, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265; Hudson v. Ry. Co. (D. C.) 226 Fed. 43; Clegg v. Ry. Co., 203 Fed. 973, 122 C. C. A. 273.

[3] The only material question left for the determination of this court, as we read this record, is whether appellant, the railroad company, was permitted by law to waive the provisions in this bill of lading with reference to the manner and time of giving notice of the damage resulting to this shipment, and following the adjudications of the federal courts on this point, we have been forced to the conclusion that appellant could not waive this stipulation in the bill of lading, either expressly or by implication.

It is shown without dispute in the record that this form of bill of lading known as the "uniform bill of lading" had been adopted by the railroad companies with the consent and approval of the Interstate Commerce Commission, the appellant being among the number of such companies, as far back as 1908 and the stipulation in question had, under the holdings of the federal courts and Interstate Commerce Commission itself, become a part of the tariff rate filed by such railroad companies with the Interstate Commerce Commission; and appellant, under the law as declared by the federal courts, could not disregard such provision or stipulation in such bill of lading, but was bound to enforce and give effect to same as a part of its tariffs filed with the Interstate Commerce Commission.

On this point the Supreme Court of the United States, in the case of Phillips v. Ry. Co., 236 U. S. 662, 35 Sup. Ct. 444, 59 L. Ed. 774, among other things said:

"To permit a railroad company to plead the statute of limitations as against some, and to waive it as against others would be to prefer some and to discriminate against others, in violation of the terms of the Commerce Act, which forbids all devices by which such results may be accomplished. The prohibitions of the statute against unjust discrimination relate, not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments or the waiver of defenses open to the carrier."

Appellee contends, however, that even if it be true that appellant had not the authority itself to waive, either expressly or by im-

plication, the stipulation in the bill of lading, providing for notice of damage in writing within four months, that nevertheless appellant was authorized to waive, and did waive, at least by implication, said stipulation, because of the fact that the Interstate Commerce Commission itself, on February 9, 1914, authorized appellant to waive such stipulation, and appellee introduced on the trial below, in support of this contention, the following, taken from the Traffic World, issue of February 28, 1914, pp. 413 and 414:

"FOUR MONTHS' LIMITATION.

"Case No. 4844.　　29 I. C. C. 417–420. "In the Matter of Bills of Lading. Discriminations Respecting Loss and Damage Claims. Decided Feb. 9, 1914.

"Carriers and shippers in Official and Western classification territories, in order to prevent unjust discrimination, have joined in a request for the Commission's approval of a waiver for a specified period of the four months' limitation, which claims for loss, damage, or delay may be presented, as contained in the bills of lading referred to in tariffs, on file with the Commission. Held, that—

"(1) The Commission has no authority to order carriers to disregard their tariffs, nor does it feel justified in acquiescing in the adjustment of matters brought into the condition here presented by reason of disregard of tariff provisions, except from the necessity of a situation like this, when to do otherwise must leave uncorrected grossly unjust and widespread discriminations.

"(2) For reasons given in the report, the carriers should deal with all claims of this character upon their merits, in good faith, and without discrimination as to this rule regarding the period of time within which such claims should be presented."

"(5) Reasonableness of such period of limitation not passed on.

"Preliminary Report of the Commission.

"Clements, Commissioner. For the purpose of promoting uniformity as to the substance and forms of bills of lading, the carriers operating generally in Official and Western classification territories, after numerous conferences with shippers and this Commission, covering, a considerable period of time, agreed upon what was designated as the 'Uniform Bill of Lading,' which, upon a final submission to the Commission, was, in a report announced June 27, 1908, recommended by it for use among all carriers. In the Matter of Bills of Lading, 14 Interst. Com. Com'n, 346.

"In that report it was indicated that the Commission would not at that time undertake to order the carriers to use this form of bill of lading, and it was made clear that the recommendation thereof was to be understood as subject to such modification or change as might be found necessary, either by experience or upon further investigation.

"The form and contents of the bill of lading thus agreed upon by shippers and carriers, and recommended by the Commission, was adopted by most of the carriers in the territories mentioned, and its provisions embodied in their freight classifications, which were published and filed with the Commission, thus becoming a part of their established tariff schedules.

"Among these provisions was the following (section 3, paragraph 3):

" 'Claims for loss, damage, or delay must be made in writing to the carrier at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable.'

"It has been disclosed by investigation and otherwise that, during much of the period since these provisions became part of the tariff schedules of said carriers, the provision above quoted has to a greater or less extent been disregarded by most or all of them, for various causes. In many instances in the establishment of commodity rates, they have not made the proper reference to this provision published in their classifications so as to make it applicable to such commodity rates. In this respect, again, there appears to have been no uniformity of practice.

"The observance and enforcement of this limitation as to the time for presenting to the carriers claims for loss of or damage or delay to freight in some cases, and the waiver or disregard of it in others, result, of course, in widespread and serious discrimination in the territories mentioned.

"The carriers of the South did not generally adopt the so-called 'Uniform Bill of Lading,' but adopted instead another form, known as the 'Standard Bill of Lading,' which contained many features, including this provision, common to both. These carriers, however, did not make the provisions of their bill of lading a part of their classification or tariff schedules, and there does not appear to be much cause of complaint in this respect in that territory.

"The representatives of carriers and shippers alike, appearing in a general proceeding of inquiry respecting the matter of bills of lading now pending before the Commission, have joined in a request for the Commission's approval of a waiver by the carriers of the above provision, limiting the time within which claims of the character referred to might be presented to the carriers, with respect to all such claims presented prior to December 1, 1913, that were not presented within the four-month period, and also all claims accruing within two years prior to the date of this report which have not been presented to the carriers, provided such claims are presented to the carriers on or before April 1, 1914. It is urged that a waiver of this four months' limitation provision to the extent indicated is the only course that will prevent or cure the discrimination otherwise resulting. This is evidently true.

"The carriers have sought to justify or excuse their irregular practices, as above indicated, in disregard of this provision of limitation while a part of their tariff schedules, upon the ground that it was regarded by them as of doubtful legality, partly because of the existence of state statutes prohibiting and declaring such provisions of limitations void. There seems to have been a question as to whether or not such statutes controlled interstate as well as state traffic. It is explained that the carriers have felt that even if the provision referred to was valid as to interstate traffic, and not as to state traffic, injustice would result by attempting to adhere thereto in regard to the former. Other reasons have also been assigned for the irregularities in this respect, which have grown up during the period since the uniform bill of lading was agreed to, and its provisions published in the carriers' tariffs as stated. However, following some recent decisions of the Supreme Court of the United States, having particular reference to that of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257 (Traffic World, January 18, 1913, p. 163), many of the carriers, commencing about December 1, 1913, began to enforce much more rigidly the provision of limitation mentioned, realizing that there

was no more authority in law for a disregard of this provision of their tariff than any other.

"The Commission cannot regard the excuses offered as entire justification for the course pursued. When it becomes apparent to carriers that they cannot, ought not, or will not enforce the provisions contained in their established tariffs, whether in regard to matters of the kind here involved, demurrage, reconsignment, or other like practices, as well as to rates, they should change their tariffs in the manner prescribed by law, so that their practices may be in conformity thereto. The Commission has not the authority under the law to order them to disregard their tariffs, nor does it feel justified in acquiescing in the adjustment of matters brought into the condition here presented, by reason of disregard of tariff provisions, except from the necessity of a situation like this, when to do otherwise would leave uncorrected grossly unjust and widespread discriminations.

"For reasons indicated, we cannot feel otherwise than that, for the purpose of preventing such results, the carriers should deal with all claims of this character, within the dates herein specified, upon their merits, without discrimination with respect to this rule regarding the period of time within which they should have been presented. It is expected that this will be done in good faith, and that hereafter, in order to avoid discriminations of the kind here presented, the tariff provisions of carriers respecting this question will be rigidly adhered to.

"The Commission does not here express any opinion with respect to the reasonableness of the period of limitation contained in this provision, that being a matter for determination in connection with the proceeding of general inquiry above referred to."

[4-6] It will be readily seen from the statement of the Interstate Commerce Commission itself, as contained in the above, that that Commission was clearly of the opinion that it had no authority to authorize appellant to waive the stipulation in question, same being a part of its tariff schedule; and if it be true that the Interstate Commerce Commission had no authority to authorize appellant to waive this stipulation, and if appellant, without such authorization, was without authority to waive the same, then it follows that, from a legal standpoint, there could be no waiver of this stipulation in this bill of lading, either express or by implication; and we are inclined to think that the Interstate Commerce Commission did not, as admitted by it, have the authority to empower appellant, as an interstate commerce carrier, to do that which, under the acts of Congress, appellant was forbidden to do. If, however, we should not be correct in this, still we think that the implied authority from the Interstate Commerce Commission to appellant to waive this stipulation, as might be gathered from the report of the Commission above set out, could not have controlling effect in this case, for the reason that this order by the Interstate Commerce Commission was not in existence at the time this cause of action arose nor at the time this suit was commenced; and, therefore, waiving the question of authority of that Commission to authorize appellant to disregard this stipulation in the bill of lading, we must hold that this order of the Interstate Commerce Commission could not have the effect contended for by appellee in this case. Banaka v. Ry. Co., 193 Mo. App. 345, 186 S. W. 7.

This opinion has become already too lengthy, and any further discussion would make it unreasonably lengthy. It is manifest from the record that the appellee had a just and meritorious cause of action against appellant, but that it lost the same by reason of its failure to comply with the requirements in the bill of lading under which the shipment in question moved, with respect to giving to appellant the notice of damage, etc., within four months, as stipulated in that contract.

As to the plea of estoppel set up in the supplemental petition, we will only say that the same finds no support in the evidence, even if that character of plea would be available here from a legal standpoint. It is with reluctance that this court reverses the judgment in this case, since, as stated, appellee has sustained the full amount of damages recovered by him, but, from a legal standpoint, this court has no other alternative, and the judgment of the trial court is therefore reversed; and, since it is clear from the record that appellee could not recover upon another trial, judgment will be here rendered in favor of appellant, and it is so ordered.

Reversed and rendered.