HOUSTON & T. C. R. CO. v. REICHARDT & SCHULTE CO. (No. 7625.)

(Court of Civil Appeals of Texas. Galveston. March 7, 1919. On Motion for Rehearing, May 1, 1919.)

1. CARRIERS ⚓︎180(5)—CARRIAGE OF GOODS— CONNECTING CARRIERS—LIMITATION OF LIA- BILITY—INTERSTATE COMMERCE ACT.

The consignees of onion sets shipped in in- terstate commerce could recover from the ter- minal carrier for damage only on the basis of the bona fide invoice price of the property, in- cluding freight charges, if prepaid, as its value, as stipulated by the standard form bill of lad- ing issued by the initial carrier in compliance with order No. 787 of the Interstate Commerce Commission, dated June 27, 1908, pursuant to the Carmack Amendment to the Interstate Com- merce Act, despite the consignees' allegation that the terminal and initial carriers were copart- ners, and despite the amendment of the Carmack Amendment on March 4, 1915 (U. S. Comp. St. § 8604a), subsequent to the contract of carriage.

2. CARRIERS ⚓︎32(2)—CARRIAGE OF FREIGHT —LIMITATION OF LIABILITY FOR DAMAGES— INTERSTATE COMMERCE ACT—WAIVER.

The terminal carrier of an interstate ship- ment by rail, when sued for damage to the shipment, could not waive provision as to dam- ages of the standard form bill of lading issued as required by an order of the Interstate Com- merce Commission pursuant to the Carmack Amendment of the Interstate Commerce Act (U. S. Comp. St. §§ 8604a, 8604aa).

3. CARRIERS ⚓︎177(4)—CARRIAGE OF GOODS— INTERSTATE SHIPMENT—LIABILITY OF TER- MINAL CARRIER.

The terminal carrier of an interstate ship- ment under the standard form bill of lading is- sued under order No. 787 of the Interstate Com- merce Commission of June 27, 1908, pursuant to the Carmack Amendment of the Interstate Commerce Act, held, required to respond only for such damages as occurred to the shipment on its own line, despite the consignees' allegation that the terminal and initial carrier were part- ners, and the amendment of the Carmack Amendment on March 4, 1915 (U. S. Comp. St. § 8604a), subsequent to the contract of ship- ment.

4. CARRIERS ⚓︎185(1)—CARRIAGE OF GOODS— DAMAGE IN CUSTODY OF TERMINAL CARRIER —PRESUMPTION.

There is a presumption against a terminal carrier which delivers goods in bad condition that the damage occurred on its own line, though it may have transported the goods over its line in the same through and sealed car in which it received them.

On Motion for Rehearing.

5. CARRIERS ⚓︎185(3)—CARRIAGE OF FREIGHT — INTERSTATE COMMERCE — SUFFICIENCY OF EVIDENCE.

In an action against the terminal carrier of an interstate shipment of onion sets to re- cover damage by wetting in transit, evidence *held* sufficient to raise the issue as to whether or not some of the damage occurred before the sets came upon the terminal carrier's line.

6. CARRIERS ⚓︎186—CARRIAGE OF FREIGHT— INTERSTATE SHIPMENT—APPORTIONMENT OF DAMAGES.

Under a standard form bill of lading issued on an interstate shipment under an order of the Interstate Commerce Commission pursuant to the Carmack Amendment of the Interstate Commerce Act (U. S. Comp. St. §§ 8604a, 8604aa), such bill providing no carrier should be liable for loss not occurring on its own road or its portion of the through route, if damage to the shipment occurred before it came on the terminal carrier's line, the consignees' damages must be apportioned in their action as against the terminal carrier; the initial carrier having been dismissed for insufficient service.

Appeal from District Court, Harris Coun- ty; Charles E. Ashe, Judge.

Suit by the Reichardt & Schulte Compa- ny against the Houston & Texas Central Railroad Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood and Mc- Means, Garrison & Pollard, all of Houston, for appellant.

Guy Graham and Atkinson & Atkinson, all of Houston, for appellee.

GRAVES, J. This cause involves the ship- ment of a car of onion sets by J. M. Ricker from Oswego, Kan., to Reichardt & Schulte Company at Houston, Tex., over two rail- roads, the St. Louis & San Francisco from Oswego to Sherman, Tex., and the Houston & Texas Central from Sherman to Houston. The contract of shipment was evidenced by the standard form bill of lading approved by the Interstate Commerce Commission on June 27, 1908, by its order No. 787, and con- tained these two clauses:

"Sec. 2. In issuing this bill of lading, this company agrees to transport only over its own line, and except as otherwise provided by law, acts only as agent with respect to the portion of the route beyond its own line. No carrier shall be liable for loss, damage or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed.

"Sec. 3. The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the con- signee, including the freight charges, if prepaid) at the place and time of shipment under the bill of lading, unless a lower value has been represented in writing by the shipper, or has been agreed upon or is determined by the classi- fication or tariffs upon which the rate is based."

⚓︎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

When the car was delivered to and opened by Reichardt & Schulte Company in Houston on the morning after its arrival there the night before, the greater portion of the onion sets were found to be in a badly damaged condition, due to having become thoroughly soaked with water after being placed in the car. Having first salvaged all they could, the consignee then sued both the above-named railway carriers to recover damages for the loss upon the rest of the shipment. Holding the service upon the initial carrier, the St. Louis & San Francisco Railroad Company, to be insufficient, the court dismissed it from the suit, and trial proceeded against the terminal carrier, the Houston & Texas Central Railroad Company, alone.

The case was tried before a jury upon the theory that the amount by which the market value of the goods at Houston had been diminished constituted the measure of damages, and special issues were submitted directing the jury to find what, if any, loss upon that basis the Reichardt & Schulte Company had sustained. Upon the return of a verdict finding such a loss to have been sustained and fixing an amount, judgment was accordingly rendered against the railroad company therefor, from which it prosecutes this appeal.

[1] After careful consideration of all questions presented here, the conclusion is reached that only one material error was committed below, and that was in the measure of damages applied.

This was indisputably an interstate shipment, moving under the terms and provisions of a bill of lading prescribed and controlled by the Interstate Commerce Commission, thereby making the shipment a transaction in furtherance of interstate commerce and bringing it under the operation of the act of Congress known as the Carmack Amendment (Act Cong. June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. §§ 8604a, 8604aa]). St. Louis Southwestern R. Co. of Texas v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 80.

Without quoting the amendment here, it is sufficient to say that it required the initial carrier to issue a receipt or bill of lading in comport with stipulations 2 and 3 in the one here involved, fixing the invoice price of the goods to the consignee as the measure of his damages against the carrier.

While the appellee company did not directly sue on this bill of lading, it did declare against each and both of the carriers named upon a contract for through shipment between them from Oswego, Kan., to Houston, Tex., and, in proof of its case and of the terms of that contract, introduced in evidence the original of the bill of lading from

which the quoted sections have been taken as being the one under which the shipment moved. Having thus, both by express contract and through the operation of a federal statute governing all such transactions in interstate commerce as the only proof offered showed this to be, become bound by the rule fixing the invoice price as the measure of its damages, the appellee was not entitled to recover upon a different one; that is, the market value of the goods at Houston. It contends, however: First, that because of the allegation in its petition that the two railway companies were partners—which was not denied under oath—both carriers were rendered liable for the full damage it actually suffered, wholly independent of the Carmack Amendment. Second, that on March 4, 1915 (chapter 176, § 1, 38 Stat. 1196 [U. S. Comp. St. § 8604a]), which was subsequent to the date of the contract herein declared upon but prior to the trial, this amendment was itself so amended as to substitute for the invoice price rule one making the carrier liable "for the full actual loss, damage, or injury to such property," etc. (Ann. Cas. 1915B, 81), and that the state of the law at the time of the trial controlled. Third, that the issue of market value as constituting the measure of damages was submitted to, and evidence substantiating it admitted before, the jury, without objection upon appellant's part, and that it comes too late for complaint to be first made on motion for new trial.

It is not thought any of these answering positions can prevail. Just how the mere filing of an allegation that two connecting carriers extending into and transporting goods in interstate commerce across different states were partners, whether denied under oath or not, could defeat the operation of the then prevailing federal statute applying to all such transactions, does not readily occur. The cause of action declared upon, and in that regard substantiated by uncontroverted proof, constituted the shipment one in interstate commerce and so brought it within the purview of the original Carmack Amendment, which at that time was in force. The rule fixing the invoice price as the measure of appellant's liability having therefore been fixed as a matter of contract—executed and fully carried out in accord with the then existing law—its right to respond to that extent only became vested and could not subsequently be enlarged.

[2] It may be entirely true, as the appellee contends, that the effect of repealing a remedial statute is to as completely obliterate all liability thereunder as if it had never been passed, since it has often been held that no one has a vested interest in a continuance of the mere rules or doctrines, themselves, embodied in such laws. Middleton v.

Texas P. & L. Co., 108 Tex. 96, 185 S. W. 556, recently affirmed by the United States Supreme Court, 249 U. S. 152, 39 Sup. Ct. 227, 63 L. Ed. ——. But, as these authorities disclose, this principle is limited to instances where rights have not, by contract or otherwise, become vested under pre-existing law and been thereby converted into rights of property, as has been seen was the situation here. In this latter class of cases, changes in the law may not have the effect of defeating rights accruing under prior contracts, since that would run counter to the inhibitions in both federal and state Constitutions against deprivation of property rights and impairment of the obligation of contracts. Nor, the transaction here being controlled by the terms of this act of Congress, could it make any difference, we think, that no objection to the measure of damages there applied was made upon the trial below; this, for the reason that the carrier could not waive the provisions of the bill of lading. G., C. & S. F. Ry. Co. v. Texas Packing Co., 244 U. S. 31, 37 Sup. Ct. 487, 61 L. Ed. 970; Georgia, etc., Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948; Phillips v. Ry. Co., 236 U. S. 662, 35 Sup. Ct. 444, 59 L. Ed. 774; Ry. Co. v. Houston Packing Co., 203 S. W. 1140.

[3, 4] Granting then, as must be done under the above conclusions, that the rights and obligations of these litigants were to be determined by the provisions of a federal law which required the terminal carrier to respond in such damages only as occurred upon its own line (C. R. Fuel Co. v. I. C. Ry. Co., 178 Iowa, 878, 160 N. W. 353, and authorities there cited), does it follow, under the facts here developed, that appellee was precluded from any recovery at all? We think not, for this reason: Irrespective of where the burden of proof lay, the evidence below was sufficient to support a finding, not only that appellant received the shipment in good condition, but that all the damage occurred upon its own line. The rule upon this subject seems to be as follows:

"Where the goods are received by the initial carrier in good condition, they are presumed to remain so, and, where they are subsequently delivered to the consignee by the terminal carrier in a damaged condition, the presumption is that the injury occurred on its own line, and a prima facie case is made against the delivering carrier. Evidence that goods were in a damaged condition when tendered by a terminal carrier makes a prima facie case against it for the entire amount of damage, which is not overcome by simply showing that the goods were damaged to some extent, the amount of which is not shown, when they were delivered to it. The terminal carrier has the burden of separating the damage sustained before it received them from that inflicted while the goods were in its charge." Moore on Carriers, pp. 467, 468, and 469.

Neither is this presumption against the terminal carrier delivering goods in bad condition changed or modified by the fact that it may have transported them over its own line in the same through and sealed car in which it received them. St. Louis, S. F. & T. R. Co. v. Fenley, 118 S. W. 845; Texas & N. O. Ry. Co. v. Brown, 37 S. W. 785; Gulf, Colorado & S. F. Ry. Co. v. Edloff, 89 Tex. 454, 34 S. W. 414, 35 S. W. 145; Leo v. St. Paul M. & R. Co., 30 Minn. 438, 15 N. W. 872; Colbath v. Bangor & A. R. Co., 105 Me. 379, 74 Atl. 918, 134 Am. St. Rep. 569; Beede v. Wisconsin C. R. Co., 90 Minn. 36, 95 N. W. 454, 101 Am. St. Rep. 390.

But even if the rule were held to be different in interstate shipments controlled by the terms of the Carmack Amendment, and that in such cases the party seeking damages against another than the initial carrier must allege and prove that the damage occurred upon the line of the one recovered against, the case here made is still thought to have been sufficient.

While the jury found that the car had a leaky roof when furnished by the initial carrier at Oswego, Kan., there is no proof whatever that the goods were in any manner damaged while on its line. There was, however, direct and undisputed testimony from the shipper himself and his two helpers that both the car and the onion sets were dry and in good condition when shipped; one of the latter saying:

"I stayed in the car all night after loading it. * * * At the time the onions were loaded the day was fair. There was a slight shower, not enough to wet a fellow's shirt sleeves. The night after loading there was a good rain, but not a heavy one. I closed the door so that no rain came in."

After having thus left Oswego in good condition, by the uncontroverted statement of appellant's own agents and employés, the car was neither opened nor examined as to the condition of its roof, or on the inside at all, until Mr. Schulte at Houston discovered that its roof was leaking when he began unloading it on the next day after reaching its destination; indeed, there was no suggestion in the evidence that the car was even rained on after thus leaving Oswego in dry and good condition until after it came upon appellant's lines at Sherman, Tex. But at that point the evidence indicated a heavy rainfall on the day the car was detained there for four hours, while weather conditions at Houston were thus described by Mr. Schulte:

"I remember distinctly it rained the night before we unloaded this car, in Houston, Harris county, Tex. It rained very hard. * * * People that morning had to go almost knee deep to get to the car line."

As to whether or not the entire damage could have been caused at Houston, he further testified:

"If the rain got on them the night of the 12th, would they be in the condition we found them on the 13th? ' Yes, they would. They would be in the condition we found them in. * * * I do believe these onions, basing it on my experience, that I found in that condition on the morning of the 13th was due to the fact that they might have gotten damp or wet by reason of the rain on the night of the 12th. * * * I claim and believe, basing it upon my actual experience, that the onions on the morning of the 13th was placed in the condition they were in by reason of the rain that happened on the night of the 12th."

There was other testimony of similar character upon the time it would take for the condition shown to ensue after the goods had become wet.

With the body of the evidence in this state, the jury simply found—not, as appellant argues, that even a part of the damage occurred upon the initial carrier's line—but that the onion sets were damaged by water "after" their delivery to it at the point of shipment, by reason of the car having a leaky roof. This finding, in view of the positive and undisputed testimony already referred to that no rain got in and no damage was done at Oswego, together with the absence of a single circumstance tending to show the occurrence of either between that point and the connection with appellant's lines at Sherman, is not only not inconsistent with, but should, we think, be interpreted as embodying, the conclusion that no damage resulted until after the terminal line had been reached.

Under the view taken of the entire case, it but remains to deduct from the amount recovered the excess of the market value at Houston over the invoice price at Oswego of the goods lost, with such further readjustment of other items and amounts as that change necessitates. Since the facts and figures relating to these conditions are all in evidence, that is easily done. 680 bushels of the onion sets were lost, which, at the invoice price of $1.30¼ per bushel, amounted to $885.70. Six per cent. interest per annum on this sum to the date of the trial added $31.75, making $917.45. The proportionate part of the freight on the onions destroyed was $140.76, while the costs of separating the damaged and undamaged goods equaled $70.50, aggregating in all $1,128.71. The judgment below will therefore be so reformed as to give the appellee judgment for the sum of $1,128.71 with 6 per cent. interest per annum thereon from June 18, 1917, until paid, instead of $1,653 and interest, and as so reformed will be affirmed.

Reformed and affirmed.

## On Motion for Rehearing.

Both parties to this cause have filed motions for rehearing. After carefully considering them, that of appellee has been refused, while appellant's has been granted, upon the conclusion that in one particular it is well taken.

[5, 6] Upon a re-examination of the statement of facts, we conclude that, under a fair construction, and despite its meagerness in some respects, the evidence upon the whole was sufficient to raise the issue as to whether or not some of the damage to the onion sets occurred before they came upon appellant's line, and, if it did, to require a finding apportioning the same accordingly; by appropriate procedure during the trial, appellant requested the submission of these matters to the jury, but the court declined to do so, which action, we now think, without entering into a discussion of the testimony, constituted error for which the judgment must be reversed and the cause remanded for another trial.

The statements in our former opinion that "there was no suggestion in the evidence that the car was even rained on after thus leaving Oswego in dry and good condition until after it came upon appellant's lines at Sherman, Tex.," and that there were no circumstances tending to show the occurrence of either rain or damage between Oswego and a connection with appellant's lines at Sherman, being therefore somewhat inaccurate, must be modified as herein indicated.

In other respects, it is not deemed necessary to add anything to or take anything from our original opinion. Appellant's motion for rehearing is granted, our former judgment set aside, and the cause remanded.