# GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.* TEXAS PACKING COMPANY ET AL.

ERROR TO THE COURT OF CIVIL APPEALS, THIRD SUPREME JUDICIAL DISTRICT, OF THE STATE OF TEXAS.

No. 334.   Argued December 6, 1916.—Decided May 7, 1917.

A case involving rights arising from through bills of lading issued under the Carmack Amendment is reviewable by this court upon writ of error to a state court. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Starbird*, 243 U. S. 592.

By request of the shipper and by action of the carriers in dealing with the freight accordingly, a shipment governed by the Carmack Amendment and bills of lading thereunder may be diverted from the original destination and the original bills of lading be continued in force as applicable to the new destination.

When the bill of lading provides that the liability of any carrier for damage to goods shall be computed on the basis of the value of the goods—the *bona fide* invoice price to the consignee—at place and time of shipment, the difference between that value and the value of the goods when delivered at a new destination, to which they have been diverted under such bill of lading by consent of the parties, is a proper measure of damages suffered in transit.

So *held* when the goods were damaged when they reached the original destination and were sold, in bad condition, by the shipper at the new destination.

In such case the shipper discharges his duty to the carrier when he sells the goods at the new destination for the best price obtainable.

Under the Carmack Amendment an initial carrier sued for negligent damage to goods is not entitled to recover over against a connecting carrier which did not contribute to such damage.

172 S. W. Rep. 195, affirmed.

THE case is stated in the opinion.

*Mr. Alexander Britton,* with whom *Mr. Gardiner Lathrop, Mr. J. W. Terry, Mr. Evans Browne* and *Mr. A. H. Culwell* were on the brief, for plaintiff in error.

*Mr. W. O. Cox* and *Mr. Frederick S. Tyler* for defendant in error Texas Packing Company, submitted.

· MR. JUSTICE DAY delivered the opinion of the court.

Defendant in error, Texas Packing Company, brought its action in the District Court of Bell County, Texas, against the Gulf, Colorado & Santa Fe Railway Company, plaintiff in error, to recover damages growing out of a series of shipments of dressed poultry from Temple, Texas, to St. Louis, Missouri, but which were re-routed over the line of the Wabash Railroad Company from St. Louis to Chicago. The shipments were on bills of lading among the terms of which was the following: "Iced to full capacity at Temple with crushed ice adding 12% salt. Re-ice at all regular icing stations with crushed ice using 12% salt." The Packing Company in its petition, after averring the necessity of proper icing and the contract to that effect between it and the carrier, alleged negligence on the part of the carriers in failing to re-ice the poultry properly and regularly, as a result of which plaintiff claimed damages in the sum of $12,202.87.

The Santa Fe Company answered, denying the allegations of the petition, and alleging the absence of a contract of carriage from Temple to Chicago, and averred by way of cross-petition that, under the terms of the bills of lading, its obligation was to carry the shipments and deliver them within a reasonable length of time to its connecting line en route to destination, and that it did within a reasonable time carry and safely deliver the shipments in good and proper condition, or in such condition as they were received by it, to its connecting line, the Wabash Railroad Company; that, under the terms of the bills of lading, the liability of each carrier was distinctly limited to all such loss and injury as occurred while the shipments were in its possession, and that there was no loss or injury to the shipments while the same were in its

possession; that any loss or injury thereto was the result of the negligence of the plaintiff or the Wabash Railroad Company, and that it is not responsible herein for any of the losses or injuries complained of in plaintiff's petition; that the Santa Fe Company, being the initial carrier, was made responsible under the act of Congress for all loss or injury occurring en route, but that under said act it is entitled to vouch in the Wabash Railroad Company and recover over and against it for any loss or injury occasioned to the shipments in question through its negligence, and that, if there was any negligence of any carrier which resulted in loss to plaintiffs, the same was the negligence of the Wabash Railroad Company.

Accordingly, the Wabash Railroad Company was made a defendant and filed an answer, asserting that it was not a proper party to the suit, and denying that it was guilty of the negligence complained of. It further averred that the shipments were delivered at Chicago in the same condition as when it (the Wabash Company) had received them, and that it received and transported the shipments by virtue of a contract with the plaintiff to which the Gulf, Colorado & Santa Fe Railway Company was not a party or in any way interested, and prayed a dismissal with its costs.

It appears from the record that the shipments were separately billed from Temple, Texas, to St. Louis, Missouri, at dates varying from December 24th to December 30th, 1910; that upon January 4th, 1911, the shipper requested the carrier's agent, at Temple, by telephone, to divert the five cars from St. Louis to Chicago; that the agent said he would, asked where the bills of lading were, and upon being told that they were in St. Louis, said that the carrier's representative in St. Louis would perhaps see that the notations of the diversion were made upon the bills; that no new bills were issued, and that thereupon the shipments were continued to Chicago.

Concerning the stipulation as to icing in transit at "all regular icing stations," there is testimony tending to show the cars were in fact re-iced en route to St. Louis at all but one regular station,—Shawnee, Oklahoma, but the failure to re-ice at this point resulted in a lapse of from 28 to 54 hours without ice and salt.

Upon the issues made the jury found for the Packing Company against the Santa Fe Railway Company, and upon the issue between the Santa Fe and Wabash Companies the verdict was in favor of the Wabash Company. The District Court rendered judgment accordingly, and the case was taken to the Court of Civil Appeals, where the judgment of the District Court was affirmed. 172 S. W. Rep. 195.

As the case involves rights set up and denied which arose upon through bills of lading issued under the Carmack Amendment, it is properly reviewable here. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Starbird*, 243 U. S. 592. Indeed, both parties admit that the federal statute controls, and the case must be decided under its provisions.

As required by the Texas statute (Art. 1639 of the Revised Statutes of Texas, 1911), the Court of Civil Appeals made findings of fact, in which it said:

"The verdict of the jury is amply supported by testimony, and we therefore make findings of fact to the effect that appellant breached its contract of shipment, as alleged in appellee's petition, and that, as a result of that breach, the property which was shipped was injured and damaged to the extent found by the jury and that the proof failed to show that any of the damage referred to was caused by the Wabash Railroad Company."

The plaintiff in error, in urging certain grounds for the reversal of the judgment of the Court of Civil Appeals, contends that the District Court erred in charging the jury as to the measure of damages. On that subject the District Court charged the jury as follows:

"(4) If you find for the plaintiff you will assess the damages at the difference between the invoice price of said poultry, to-wit, the sum of Twenty Two Thousand Two Hundred Thirty-Eight and 56/100 ($22,238.56) Dollars, and the value of said poultry at the time the same was delivered to plaintiff or its agents, the Western Cold Storage Company in Chicago, by the carrier, with six per cent interest per annum from January 15th, 1911."

This interstate shipment was governed by the terms of the Carmack Amendment, requiring the initial carrier to issue a receipt or bill of lading, and as this court frequently has held, with the effect of making such contract the measure of liability between the parties. It is insisted that inasmuch as the bill of lading made St. Louis the point of destination, it is immaterial what the value of the property was in Chicago, to which point the goods were shipped, having been sold in transit to a company in that city. On this point the record shows that the bills of lading covered the shipment of five cars of dressed poultry from Temple, Texas, to St. Louis, where they were consigned to the "order of the Texas Packing Company, notify St. Louis Refrigerating and Cold Storage Company." There is testimony to show that the poultry while in transit was sold in Chicago, and that while the cars were in St. Louis on the sidetrack of the St. Louis Refrigerating & Cold Storage Company the shipper called upon the agent of the Santa Fe Company at Temple to divert the cars to Chicago. The testimony also shows that the agent promised to do so; said that he would wire a representative of the railway company in St. Louis to divert the cars; that no new bills of lading were issued; that the agent asked for the original bills of lading and was told that they were in St. Louis, and said that the representative of the carrier there would perhaps call at the bank and make the proper notations thereon.

It is fairly inferable from the evidence that the bills of

lading originally issued were continued in force by the
action of the parties, simply changing the place of destina-
tion, and remained binding contracts when the Santa Fe
Company accepted the diversion of the shipment from
St. Louis to Chicago.

The bills of lading contained this stipulation:

"The amount of any loss or damage for which any
carrier is liable shall be computed on the basis of the value
of the property (being the bona fide invoice price, if any,
to the consignee, including the freight charges if prepaid)
at the place and time of shipment under this bill of lading,
unless a lower value has been represented in writing by
the shipper or has been agreed upon or is determined by
the classification or tariffs upon which the rate is based,
in any of which events such lower value shall be the max-
imum amount to govern such computation, whether or
not such loss or damage occurs from negligence."

The testimony showed that the invoice price of the poul-
try at Temple to the Packing Company was $22,238.56,
and that the poultry was worth at least that sum at
Temple at the time of shipment. We think that in taking
this sum as the basis of computing damages the trial court
did but enforce the stipulation in the bills of lading. That
sum was the *bona fide* invoice price to the consignee, which
the bills provided was to be the basis of recovery in case
of loss or damage. We think the court properly charged
the jury to take the difference between this invoice price
and the value of the poultry at the time the same was
delivered in Chicago in arriving at the amount of damages.
No question is raised in this case as to the right of the
plaintiff to recover also the freight paid. See *Pennsylvania
R. R. Co.* v. *Olivit Bros.*, 243 U. S. 574.

The testimony shows that the poultry reached St. Louis
in poor condition and that the cars were there re-iced and
forwarded to Chicago, where the poultry was delivered,
still in bad condition, and really unfit for market. It was

nevertheless sold for the best price which could be obtained.   When the poultry reached Chicago in that condition, the consignee discharged its duty to the Railway Company when it sold the damaged goods for what could be obtained for them.

The testimony shows that the poultry was taken to a storage company at Chicago, where it was kept until it could be sold, and ultimately realized the sum of $10,035.69.   The jury returned a verdict, under the instruction of the court to deduct the value of the property at Chicago from the invoice price, in the sum of $9,000 and interest.   Evidently, in this state of the record, no harm was done to the rights of the plaintiff in error in assessing the sum which the jury awarded against it.

We cannot agree with the contention of the plaintiff in error that the value of the deteriorated poultry at Temple or St. Louis should have been taken as the sum to be deducted from the invoice basis of value.

Apart from the stipulation of these bills of lading, the ordinary measure of damages in cases of this sort is the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive. *New York, Lake Erie & Western R. R. Co.* v. *Estill,* 147 U. S. 591, 616.   The stipulations of these bills of lading changed this rule in the requirement that the invoice price at the place of shipment should be the basis for assessing the damages.

The poultry in fact had no market price at Temple or elsewhere.   It was badly deteriorated, and when the shipper sold it at the point of destination for the best price it would bring he did all that could be fairly required of him to save the carrier from resulting loss.

The trial court charged that the Santa Fe Company was entitled to a recovery against the Wabash Railroad Com-

pany if the jury found that the Santa Fe Company and Wabash Railroad Company were both guilty of negligence in the handling of the poultry, in which event the jury were told that the Santa Fe Company would be entitled to a verdict against the Wabash Railroad Company for that part of the sum to which the Wabash Company had contributed by its negligence to plaintiff's injury. It is urged by the plaintiff in error that the Santa Fe Company as the initial carrier, regardless of its own negligence, was entitled to recover against the Wabash Company in proportion as the negligence of that company contributed to the loss; and it is contended that the testimony tends to show that the Wabash Railroad Company did not properly re-ice and otherwise care for the poultry in transit. The record shows no proper exception reserved upon which to base this criticism; and the question becomes immaterial in view of the verdict of the jury in favor of the Wabash Railroad Company, and the express finding of the Court of Civil Appeals that the proof failed to show that any of the damages had been caused by the Wabash Railroad Company.

We find no error in the judgment of the court below, and it is

*Affirmed.*