613 F.2d 1344
 FROSTY LAND FOODS INTERNATIONAL, INC., d/b/a Lorenz
International, an Alabama Corporation, Plaintiff-Appellee,
v.
REFRIGERATED TRANSPORT COMPANY, INC., a Georgia Corporation,
Defendant- Appellant.
 No. 79-2917
 
 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 March 20, 1980.
 Serby & Mitchell, Richard M. Tettelbaum, Martin W. Alpert, Atlanta, Ga., for defendant-appellant.
 Hobbs, Copeland, Franco & Screws, Richard H. Gill, Montgomery, Ala., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before AINSWORTH, FAY and RANDALL, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 This is an appeal by a motor common carrier from an adverse judgment growing out of cargo damage to a shipment in interstate commerce. Plaintiff Frosty Land Foods International, Inc. ("Frosty Land") brought this suit against Refrigerated Transport Company, Inc. ("RTC") seeking damages it allegedly sustained as a result of RTC's negligence in transporting a truckload of beef. RTC answered and filed a counterclaim against Frosty Land claiming past due transportation charges. On RTC's motion, the district court granted summary judgment on the counterclaim for $9,653.91. The case then proceeded to trial before a jury on plaintiff's claim for damages resulting in a verdict in favor of Frosty Land in the amount of $14,275.74.[1] Although RTC complains of several errors in the trial of this case, only two basic issues require discussion: (1) whether substantial evidence exists in the record to support the jury's award of damages against RTC, and (2) whether the trial court properly instructed the jury on the issue of Frosty Land's duty to mitigate its damages. We find no reversible error in the proceedings and accordingly affirm.
 
 
 2
 Frosty Land shipped a load of utility beef hindquarters from its plant in Montgomery, Alabama to Scott Meat Company in Los Angeles via an RTC truck. The load included meat slaughtered on December 6, 1977 by Frosty Land and meat slaughtered on December 1 by Shapiro Packing Company in Augusta, Georgia. After loading was completed Frosty Land placed seals on the RTC trailer. RTC did not participate in the loading of its trailer nor did it inspect its contents.
 
 
 3
 On December 7, at approximately 12:55 a. m., two of RTC's drivers departed from the Frosty Land facility in Montgomery. The bill of lading called for delivery at Scott Meat Company at 6 a. m., Thursday, December 8, but this date was later changed to Friday, December 9, at 6 a. m. The RTC drivers arrived in Los Angeles at approximately 3:30 p. m., Friday, December 9. Upon arrival they called Scott who notified them that it could not process the meat at that time. The drivers checked into a motel for the weekend.
 
 
 4
 On Monday, December 12, at approximately 9 a. m., the load was taken to Scott. It was found to be in off condition strong smelling, dark and slimy. After inspecting 65 of the 308 carcasses, Scott refused the meat. Plaintiff's witness testified that there was a large amount of blood on the floor of the trailer and that the meat at the back of the load was slick and slimy, an indication that the spoilage was due to exposure to excessive temperatures. Defendant's witness testified that he failed to observe the presence of blood on the floor and that the meat at the back of the load, in his opinion, was damaged from age. On Tuesday, December 13, Frosty Land sold the meat after extensive trimming at a loss of approximately $13,529.05.
 
 
 5
 In its assertion that the jury award is not supported by substantial evidence, appellant RTC argues that Frosty Land failed to bear its burden of proving a prima facie case of RTC's liability as required by the Interstate Commerce Act, 49 U.S.C. § 20(11).[2] Under section 20(11), a common carrier is liable for actual loss or injury to property it transports. This statute represents a codification of the common law rule that a common carrier is liable for damage to goods it transports unless it can show by a preponderance of the evidence that the damage was caused solely by (a) the act of God, (b) the public enemy, (c) the act of the shipper, (d) public authority, or (e) the inherent vice or nature of the goods. Before the burden shifts to the carrier, however, the shipper must make out a prima facie case of the carrier's negligence. It does this by showing (1) delivery of goods to the carrier in good condition, (2) delivery by the carrier to the consignee in damaged condition, and (3) damages. Once these three elements are established, a presumption of negligence operates against the carrier, who must then come forward with sufficient facts to establish that the damages were due solely to one of the excepted causes listed above. See Missouri Pacific Railroad v. Elmore & Stahl, 377 U.S. 134, 137-38, 84 S.Ct. 1142, 1144-45, 12 L.Ed.2d 194 (1964).
 
 
 6
 Appellant's principal contention is that there was no competent evidence presented at trial to establish that the meat, which was delivered under seal to RTC for shipment, had been tendered to the carrier in good condition. When goods traveling under seal are delivered to the consignee in damaged condition, the shipper must submit adequate proof that the meat was in good condition when delivered to the carrier. Ed Miniat, Inc. v. Baltimore & Ohio Railroad, 190 U.S.App.D.C. 380, 383, 587 F.2d 1277, 1280 (D.C. Cir. 1978). The issue before us thus resolves into determining whether Frosty Land's evidence satisfied its initial burden of establishing the first element of its prima facie case against RTC. We conclude that it did.
 
 
 7
 RTC contends that the meat received from Shapiro Packing Company was old and that this meat had deteriorated by the time the load arrived at Scott. According to RTC, the deterioration was due solely to the beef's age and not to exposure to excessive temperatures. In support of RTC's argument, one of its drivers testified that the temperature of the small portion of the meat that could be reached through the porthole in the trailer was checked every four hours in transit and no substantial variations in temperature were detected and no refrigeration problems were encountered.
 
 
 8
 Frosty Land's evidence established that its quality control required that all meat at its facility, whether slaughtered there or received from another meat packing house, be inspected for wholesomeness and freshness by its personnel. Testimony indicated that the beef was also inspected by one or more of seven permanent United States Department of Agriculture inspectors at the plant as well as by military inspectors present at the facility. There was further testimony that the plant had been inspected by representatives from the Department of Agriculture and, therefore, complied with its requirements for cleanliness and temperature maintenance.
 
 
 9
 Furthermore, Frosty Land showed that the Shapiro beef shipped to its facility in Montgomery was inspected at several different times after receipt and that no problems were noted. The forequarters of these same carcasses shipped to Scott were sold to other customers without complaints of deterioration resulting from age or other cause. Furthermore, there was testimony that if the meat had been kept properly refrigerated in transit, the spoiled condition of the meat would not have resulted from age alone. Although the older meat would have suffered ill effects sooner than the newer meat, both the old and the new meat would have been in good condition at the time of the scheduled delivery date if the meat had been properly handled during shipment.
 
 
 10
 There was testimony that the scheduled delivery date allowed for a reasonable transit time from Montgomery to Los Angeles where two persons were participating in the driving. Moreover, the evidence showed that the RTC trailer used to transport the beef had been involved in a wreck prior to the trip and had experienced problems with the cooling unit.
 
 
 11
 Although plaintiff failed to introduce any specific evidence noting precisely the condition of the meat at the time it was placed on the RTC trailer, we find that the evidence is sufficient to support the jury's finding that the beef was delivered to RTC in good condition. As noted earlier, once the shipper has shown delivery in good condition, there is a presumption of negligence operating against the carrier, who then must show not only its freedom from negligence but the cause of the deteriorated condition of the product. It is for the jury to determine whether the carrier has met its burden, Missouri Pacific Railroad, supra, 377 U.S. at 138-39, 84 S.Ct. at 1145, and its verdict was adverse to the carrier.
 
 
 12
 In arguing that the jury award was not based on substantial evidence, RTC also contends that Frosty Land failed to carry its burden of proof on the issue of damages. This argument is without merit. It is undisputed that the meat delivered to Scott was in off condition. Upon learning of Scott's rejection of the beef after it had inspected it, Frosty Land made every effort to sell the damaged meat. On December 15 Frosty Land finally succeeded in finding a purchaser who agreed to buy the meat only after extensive trimming. The difference between the final sales price and the price Scott had agreed to pay for the meat in good condition was $13,529.05.
 
 
 13
 The amount of damages shown and that awarded was no more than that amount which would, in the usual and ordinary course of things, result from the carrier's failure to perform,[3] i. e., the difference between the value of the commodity at the place of shipment and the reasonable value of the damaged product as delivered. See Gulf, Colorado & Santa Fe Railway v. Texas Packing Company, 244 U.S. 31, 37, 37 S.Ct. 487, 489, 61 L.Ed. 970 (1917). See also Holden v. S. S. Kendall Fish, 395 F.2d 910, 912 (5th Cir. 1968). The value of the meat at the place of shipment is clear the price the consignee agreed to pay for the meat had it arrived in the same condition as shipped. RTC contends, however, that Frosty Land failed to establish the market value of the damaged meat when it arrived at Scott. Its contention is erroneous. Market value of meat that is spoiled, deteriorated and in a partially unfit condition "is at least a question of fact." Sunset Motor Lines v. Lu-Tex Packing Co., 256 F.2d 495, 498 (5th Cir. 1958). Plaintiff succeeded in finding a willing purchaser for the damaged meat only after strenuous efforts and it was thus not unreasonable for the jury to award actual damages which the shipper, Frosty Land, showed it had sustained.
 
 
 14
 Finally, RTC complains that the trial court's charge to the jury failed to instruct the jury properly on the issue of mitigation of damages. A party is not entitled to have the jury instructed in the particular language of its choice. However, the charge, considered as a whole, must instruct the jury so that the jurors understand the issues to be tried and are not misled. Baker and Co., Florida v. Preferred Rich Mutual Insurance Co., 569 F.2d 1347, 1350 (5th Cir. 1978).
 
 
 15
 Once damage and fault have been shown, the carrier has the general burden of proving that the plaintiff could have reasonably mitigated its damages. Fraser-Smith Co. v. Chicago, Rock Island & Pacific Railroad, 435 F.2d 1396, 1402 (8th Cir. 1971). In instructing the jury on damages, the court charged the jury as to Frosty Land's duty to mitigate RTC's loss.[4] No mention was made of the carrier's burden of proof. RTC thus may have gotten a more favorable instruction than it was entitled to. In any case, the charge was sufficient to insure that the jury understood the issue so that no substantial rights of either party were adversely affected. The jury was justified in finding for the shipper. Since the evidence showed that Frosty Land sold the meat in Los Angeles for the best price it would bring, the shipper had done, therefore, all that could be fairly required of it to save RTC from resulting loss. See Gulf, Colorado and Santa Fe Railway, supra, 244 U.S. at 37, 37 S.Ct. at 489.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Fed.R.App.P. 34(a); 5th Cir. R. 18
 
 
 [1]
 The award included damages Frosty Land sustained as a result of RTC's negligence in shipping the beef and a subsequent claim by plaintiff for sums due it by RTC on open account
 
 
 [2]
 49 U.S.C. § 20(11) was repealed October 17, 1978. The substance of the statute was reenacted as 49 U.S.C. § 11707(a)(1)
 
 
 [3]
 Section 20(11) provides in pertinent part:
 Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States . . . .
 The new section 11707(a)(1) also imposes liability on the carrier:
 S 11707. Liability of common carriers under receipts and bills of lading
 (a)(1) A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and applies to property reconsigned or diverted under a tariff filed under subchapter IV of chapter 107 of this title. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.
 
 
 [4]
 Regarding Frosty Land's duty to mitigate its damages, the trial court charged the jury that
 it is the duty of a person damaged to exercise ordinary care to reduce his damages. . . . A damaged party is bound to exercise such care as a reasonably prudent person would exercise under like circumstances to reduce or to mitigate its damages. And it can recover only such damages as would have been sustained had such care been exercised. . . .